The **MILLERS MUTUAL FIRE INSURANCE COMPANY OF TEXAS,**
Appellant,

v.

Douglas Cleo **MONROE**, Appellee.

No. 5219.

Court of Civil Appeals of Texas, Waco.

May 3, 1973.

Rehearing Denied June 7, 1973.

Sheehy, Cureton, Westbrook, Lovelace & Nielsen, Dan E. Mayfield, Jr., Waco, for appellant.

Carter, Jones, MaGee, Rudberg, Moss & Mayes, Jack B. Cowley, Dallas, for appellee.

VIC HALL, Justice.

This is a workmen's compensation case. It was initiated by appellant, The Millers Mutual Fire Insurance Company of Texas, in the form of an appeal to set aside awards made by the Industrial Accident Board in favor of the appellee-workman, Douglas Cleo Monroe, for allegedly compensable injuries which he claims were suffered by him on December 1, 1970, and December 31, 1970, while in the course of his employment with Jarvis-Paris-Murphy Company, Inc., in Hillsboro, Texas.

In his cross-action, Monroe alleged that "by reason of either of the injuries, or alternatively, by a combination of the two * * * he has been rendered totally and permanently incapacitated."

Trial was to a jury. After the parties rested their proof, Monroe asked for and was granted a non-suit on the December 1st injury. Accordingly, only the December 31st injury was submitted to the jury.

Insofar as pertinent to an understanding of appellant's complaints, the jury, answering special issues numbered as follows, found that: (1), (2) and (3) Monroe received an accidental injury on December 31, 1970, while he was an employee of Jarvis-Paris-Murphy, Inc.; (4) the injury was received in the course of his employment; (5) Monroe sustained total incapacity following the injury, (7) which began on December 31, 1970, and (8) was permanent; (6) the injury was a producing cause of the total incapacity; (14) and Monroe's employer had notice of the injury within 30 days after its occurrence. The jury (9) failed to find that Monroe sustained or will sustain any partial incapacity following the injury.

Judgment awarding Monroe total and permanent disability benefits was rendered on the verdict.

Appellant comes forward with eighteen points of error, contending:

(Points 1, 2, 3 and 4). The trial court erred in refusing to submit appellant's requested special issues one through four which would have required the jury to decide whether the alleged injury of December 1st contributed to any total or partial incapacity caused Monroe by the December 31st injury; and, if so, the percentage of contribution.

(Points 5 through 17). The evidence is legally and factually insufficient to support the jury's answers to special issues nos. 4 (course of employment), 5 (total incapacity), 6 (producing cause), 8 (permanent duration of incapacity), and 14 (notice of injury to employer within 30 days).

(Point 18). The trial court erred in admitting certain hearsay testimony from medical records.

In order to reduce a workmen's compensation claimant's recovery because of a previous injury, the insurance carrier

must prove, among other things, the amount or percentage that the prior injury contributed to the present incapacity. Transport Insurance Company v. Mabra (Tex.Sup., 1972), 487 S.W.2d 704, 707. Although the record contains evidence that the injury of December 1st contributed to Monroe's incapacity, we find no evidence of the amount or percentage of such contribution. For this reason defendant's requested issues were properly refused.

The record reveals the following facts. Monroe was an employee of Jarvis-Paris-Murphy Company, Inc., from July, 1970, until February, 1971, as a manual laborer. Prior to December 1, 1970, he was in good health and able to work and support his family of four. On that day he suffered a "severe sprain-type" injury to his right shoulder while lifting a heavy grain auger. He continued working, though in pain. On December 31, 1970, after working about an hour, he and three other employees went to a grain warehouse to wait for some freight cars to be "switched in" so they could load them with grain. While waiting, Monroe was sitting on a shovel. The shovel began to wobble and Monroe reached with his right hand to steady it. He felt a cramp and pain in his right arm. He fell off the shovel, struck his head on the floor, and immediately suffered an epileptic seizure. Since that time, he has been in three hospitals for treatment of seizures. He still suffers the seizures, which strike without warning. After a seizure he has a numbness and cramp in his right hand, both hands swell, and he can't use them for two or three days. He is getting worse every day. He has been unable to hold steady employment since February, 1971, and earned about $300 in 1971. He never experienced a seizure or convulsion before December 31, 1970.

Monroe is still under medical treatment for his seizures. He must take "maximum doses" of anti-convulsant drugs. These doses are calculated to make most people "extremely drowsy" and they make Monroe feel "drunk and weak * * * just sort of weak all the time." Monroe must remain on this type of medication indefinitely. Monroe's treating physician does not recommend that Monroe work around heavy machinery, or drive, or work at heights. In his opinion, Monroe's fall to the floor caused the seizures. It is his further opinion that Monroe will not be able to perform the usual tasks of a workman in the future.

When Monroe fell to the warehouse floor, Gene Lewis, a fellow employee, called to the company office on an intercom and told G. R. Murphy, Jr., the company manager, that something had happened to Monroe. Murphy sent Arthur Deiterman, the company bookkeeper, to the warehouse. Soon, Deiterman called back and asked Murphy to call an ambulance, which was done. Monroe was carried by ambulance from the warehouse to the Grant-Buie Hospital in Hillsboro. Within two hours, Deiterman went to the hospital "to see about Monroe" and "to see that he was properly attended and all." On January 4th, Murphy instructed Deiterman to complete and file an "employer's first report of injury" on Monroe's injury of December 31st, and "he filled one out."

Jarvis-Paris-Murphy Company, Inc., admitted: Within 30 days after December 31, 1970, the company had actual knowledge that Monroe experienced a medical problem on that date on company premises. On that date Monroe was sitting on a shovel and either collapsed or fell from the shovel onto the floor. At all times on that date, Monroe was required by the company to hold himself in readiness for work and be ready and able and available to perform whatever company duties he might be called upon to perform. Before the seizure on December 31, 1970, no one connected with the company was aware of any physical infirmity that prevented Monroe from performing his duties, but after the seizure on that date Deiterman and Murphy were each aware that some physical infirmity prevented Monroe from further work that day.

**628**

Specifically, appellant argues that the evidence is insufficient to show that Monroe's injury was received in the course of his employment because there is no showing that the injury "originated in his work" and "occurred at a time when [he] was engaged in or about the furtherance of the affairs or business of [his] employer." This argument is untenable under the record. At the time of injury Monroe was "in readiness" and on the job on his employer's premises waiting for further work assignment as "required" by his employer. According to Monroe's unrefuted testimony, nothing was supplied for him to sit upon while waiting and that was why he chose the shovel for that purpose. To hold that Monroe's injury did not originate in his work or that it did not occur at a time when he was acting in furtherance of the affairs or business of his employer would be to give a strict interpretation to our workmen's compensation laws, "which should be liberally construed with a view to accomplish their purpose and to promote justice." Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 74 (1922).

[4] Although there is other evidence in the record that supports each of the questioned findings, the evidence we have recited is legally sufficient to do so. Moreover, a review of all of the evidence convinces us that it is factually sufficient to support the findings.

Over appellant's objection, the court permitted Monroe's attorney to read to the jury hearsay testimony contained in the records of the Grant-Buie Hospital, which tended to bolster Monroe's testimony that his head struck the floor when he fell off the shovel. We agree with appellant that the admission of the testimony was error. Nevertheless, a careful study of the entire record leads us to the conclusion that the error did not amount to such a denial of appellant's rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in

the case. It was therefore harmless. Rule 434, Vernon's Tex.Rules Civ.Proc.

Appellant's points and contentions are overruled. The judgment is affirmed.

### ON MOTION FOR REHEARING

In its motion for rehearing, and supplement thereto, appellant vigorously challenges our holding that the evidence is sufficient to support the jury's finding, in answer to special issue no. 14, that Monroe's employer had notice of the December 31st injury within 30 days after its occurrence.

In connection with issue no. 14, the court instructed the jury: "Notice to or actual knowledge on the part of a foreman or other supervisor or an agent designated by the employer to receive such notice is 'notice to the employer'." [1] No objection was made to the instruction.

We have again sifted the evidence, and we remain convinced that it is legally and factually sufficient to support the jury's answer to issue 14.

The other assignments of error in the motion for rehearing are also without merit and the motion is overruled.

---

1. See Sec. 4a, Art. 8307, Vernon's Ann.Tex.Civ.St.