**HARTFORD ACCIDENT & INDEMNITY COMPANY, Appellant,**

v.

**Jose CONTRERAS, Appellee.**

**No. 16154.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Aug. 9, 1973.

Rehearing Denied Aug. 30, 1973.

Wandel & Bousquet, R. D. McPherson, Houston, T. G. Bousquet, Houston, of counsel, for appellant.

Kronzer, Abraham & Watkins, Robert E. Ballard, Houston, W. James Kronzer, Houston, of counsel, for appellee.

COLEMAN, Chief Justice.

This is an appeal from a judgment in a Workmen's Compensation case awarding the plaintiff compensation for 260 weeks' temporary total incapacity plus $1,513.00 in past medical expenses. In view of the decision of the Supreme Court of this State in Texas Employer's Insurance Association v. Chappell, 16 T.S.C.J. 261 (1973), the plaintiff has voluntarily remitted the sum awarded for past medical expenses.

By its first point of error the defendant asserts that "the trial court erred in refusing its requested Special Issue A regarding accidental injury for the reason that such issue was raised by the evidence and was supported by the pleadings, and the court's refusal denied to appellant the defense of no 'accidental injury.'" The second point reads:

> "The trial court erred in not granting an instructed verdict or Appellant's Motion for Judgment N. O. V. for Appellant for the reason that there is no evidence that Plaintiff sustained an accidental injury in the course and scope of his employment."

Appellant also presents points of error relating to the admission of certain medical testimony; the finding on wage rate; the refusal of the trial court to submit requested issues on subsequent injury; and improper jury argument.

The plaintiff was employed as a laborer by Bayou Service Company, and was working at the Monsanto Plant in Brazoria County on the date of his alleged injury. His job consisted of unloading a boxcar of 50-lb. bags of a chemical substance with a fork lift and then unloading the fork lift onto a conveyor belt with two men lifting each bag. The plaintiff testified that he worked at the job all day and that he started feeling pain in his back "by the evening." He testified that he didn't slip or fall down and that he couldn't relate the injury to any particular hour of the day or to the lifting of any specific bag. He said

that when he started feeling the pain that evening he thought "it was just tiredness," but that the next morning he couldn't bend. He then reported the injury and was sent to a Doctor Carlos Fuste on March 17, 1971.

Dr. Fuste, offered as a witness by the defendant, testified that the plaintiff told him that he "had been lifting some bags of PA and on my supper hour, about 8:00 o'clock last night, I noticed pain in my back." He then examined plaintiff and took x-rays. The x-rays were negative for any pathology. He found that the patient had pain on forward motion. Other signs and tests were negative. He said "other things" indicated that "perhaps the patient had an acute muscular condition rather than a bone or joint pathology." By "acute" he meant something of sudden onset rather than something of long term standing. His diagnosis was fibromyocitis traumatic because of the history. An injury caused by lifting is considered trauma. The history was consistent with his findings on examination. A strain or sprain basically is a pulling apart or tearing of the fibers in one of the soft tissues. In his examination he found no evidence of old injury to the low back.

In answer to the question, "Would repeated stresses of lifting and turning with the 50-pound bags be calculated to produce just the type of injury that you found and reported?" Dr. Fuste said, "It would aggravate the original injury, the injury sustained in lifting 100 bags. Somewhere in that 100 you injured it and beyond that is just an aggravation of the original injury. . . . . The tear that occurs is the tear that produces the pain. Let's say it is a tear. And from that point on all that happens is more bleeding, perhaps, edema, swelling, more production of pain, but all related to the original injury. The only thing the rest of the lifting does is aggravate the original injury."

Dr. Larry Don Smith testified that he had treated Jose Contreras. He thought

he first saw him in March of 1971 when he officed at the Alvin Memorial Hospital and Clinic. He moved his office in July, 1971, and the records of his treatments of Jose Contreras prior to that time remained at the clinic. His records began on July 14, 1971, at which time plaintiff was complaining of lumbo-sacral back pain and hip and leg pain "secondary to the injury." He had been seeing plaintiff about four months prior to this date and had made blood studies and a urinalysis. He had reviewed the x-rays made at the hospital. The tests and x-rays ruled out arthritis, gout, and osteoarthritis as the cause of his problems. He stated that from the tests and examinations that he made, he determined that plaintiff's injuries were caused by trauma. By "trauma" he meant accidental stress placed on his muscles and ligaments.

At the time of the trial Dr. Smith had been treating the plaintiff for about sixteen months and had records of more than forty visits. He was asked to assume that the plaintiff had been unloading fifty pound bags of a chemical on March 15, 1971, for the "better part of the day" when he began to notice the pain in his low back. He was then asked whether he had an opinion as to whether or not the medical condition that he found on his examination of the plaintiff was caused in whole or in part by working on the job lifting and handling the fifty-pound bags. He answered, "That history sounds very compatible with what he told me and I think my records would reflect a similar history and the medical problems that I basically treated him for were the results of that type of injury." In July, 1971, he had diagnosed plaintiff's condition as a severe contusion and sprain of the lumbar spine with a lumbar rediculopathy. He defined "lumbar rediculopathy" as a sciatic nerve root irritation secondary to his back injury. He said that the work performed on March 15, 1971, caused or contributed to cause these conditions. He testified that the condition had become chronic and that in his opinion based on reasonable medical probability the chronic injury was related to the on-the-job injury.

Dr. Smith testified that he did not believe that the plaintiff told him about any prior injury to his back but that he might have told him about an injury suffered subsequent to March 15, 1971. He said that if he suffered both prior and subsequent injuries he would believe that all three were "contributing factors to his present condition."

In answer to a question concerning the significance of a possible injury on April 26, Dr. Smith testified:

"I pointed out previously that reinjury is a big problem in patients of this nature and that frequently it is several injuries piled on top of each other that end up with this group of symptoms and physical findings that we have and this is not a surprising thing at all, and that he could possibly have had an injury even prior to the injury that brought him in initially for treatment in March. For example, if you sprain your back to fifty percent of normal injury you will have absolutely no symptomatology. You have got to get up past the pain threshhold, say seventy or eighty percent injury before symptoms are present.

·   ·   ·

"Q. Where there is no such occurrence where there is no way that a person could pinpoint to you when it began, just that it came on gradually and got progressively worse. Now, I am saying, isn't that more consistent with a weakened condition to begin with than the person who twists or does something or slips or strains overhard where they know when they did it?

"A. Right. I can see the point you are making and basically if you assume those underlying facts you could never be certain of when anyone ever injured anything because a surprising number of people would work normally at a job and

do things and then when they wake up the next morning they are feeling a little uncomfortable. Not when they are going to bed but by the time they wake up in the morning they can hardly limp in here and it is true that they had been lifting two hundred and fifty pound sacks the day before and they can't tell me whether it was the hundred and fifty-first sack or the fifty-first sack that they lifted wrong that probably did this. One of them very likely did it.

"Q. One or all of them together?

"A. Very likely one started the injury and then the rest contributed to it.

"Q. Each one was a straight trauma thereafter?

"A. Yes, sir."

Contreras testified that sometime prior to March 15, 1971, in 1969 or 1970, he sprained his back while working for the City of Alvin. He went to the doctor one time. He didn't need to go back again. He got well. He was off work three or four days and then went back to work.

Dr. Fuste returned Contreras to full duty and he returned to work on March 22, 1971. On April 16, 1971, he was helping the foreman lift some boards when he felt a sudden pain. He returned to Dr. Fuste, who examined him and sent him to Dr. Pearson. Dr. Pearson treated him and released him to full duty about June 1. During the first part of July, 1971, Contreras quit his job.

■ In Olson v. Hartford Accident and Indemnity Company, 477 S.W.2d 859 (Tex.1972), the court restated the rule that to recover under the Workmen's Compensation Act, except in certain cases of occupational disease, there must be proof of "an undesigned, untoward event traceable to a definite time, place, and cause."

This rule was considered in Transport Insurance Company v. McCully, 481 S.W. 2d 948 (Tex.Civ.App.—Austin 1972, err. ref. n. r. e.), where the court said:

"The 'undesigned, untoward event' in this appeal was the appellee's heart attack which he experienced about two hours after he went to work. The 'definite time, place and cause' referred to in *Olson* is that two hour period of physical strain and mental stress which occurred immediately prior to the heart attack. Contrary to appellant's argument, *Olson* does not require that the compensation claimant shoulder the near impossible burden of proving which specific task during the two hour period precipitated his attack. It is proof enough to show all of these happenings in addition to physical strain over the two hour period followed by physical pains to establish a compensable injury."

■ The jury found that the plaintiff suffered an injury on or about March 15, 1971, in the course of his employment with Bayou Service Company. The medical testimony, together with plaintiff's testimony detailing his activities on the date in question, supports this finding of the jury. There is medical testimony that he suffered a "pulling apart or tearing of the fibers in one of the soft tissue" of his back, and that such injury was probably caused by lifting one of the 50 pound bags of chemical on the date in question. This is evidence of the accidental nature of the injury. There was sufficient proof of an undesigned, untoward event traceable to a definite time, place and cause. Barron v. Texas Employers' Ins. Ass'n, 36 S.W.2d 464 (Tex.Comm.App.1931); Midwestern Insurance Company v. Wagner, 370 S.W. 2d 779 (Tex.Civ.App.—Eastland 1963, err. ref. n. r. e.); United States Fidelity and Guaranty Company v. Herzik, 359 S.W.2d 914 (Tex.Civ.App.—Houston 1962, err. ref. n. r. e.); Texas Employers' Ins. Ass'n v. Hatcher, 365 S.W.2d 641 (Tex.Civ.App.—Waco 1963, err. ref. n. r. e.); Hartford Accident & Indemnity Co. v. Gant, 346 S. W.2d 359 (Tex.Civ.App.—Dallas 1961).

Special Issue No. One submitted by the trial court asked whether plaintiff "received an injury to his body on or about

**424**

March 15, 1971, in the course of his employment with Bayou Service Company." Special Issue No. Two was predicated on an affirmative answer to Special Issue No. One, and asked whether such injury was the producing cause of any total incapacity. Defendant's Requested Issue No. A, which was refused, reads:

"If you have answered Special Issue No. 'We do', and only in that event, then answer:

SPECIAL ISSUE NO.

"Do you find from a preponderance of the evidence that such injury was the result of an accident?

"'Accident' means an undesigned or unexpected occurrence traceable to a definite time and place.

"Answer: 'We do' or 'We do not.'"

■ No issue on "accident" was submitted by the trial court. The defendant plead that plaintiff's incapacity or disability, if any, "is solely attributable to prior injuries, diseases and infirmities, or a combination thereof of origin wholly independent of any accidental injury within the meaning of the Workmen's Compensation Law of the State of Texas, and that such incapacity or disability, if any, was neither aggravated nor enlivened by an accidental happening or injury during the course and scope of plaintiff's employment with Bayou Service Company on March 15, 1971." By this pleading the defendant did not raise the question of no accidental injury. It deals with prior injury. No affirmative defense is raised placing the duty of requesting issues on the defendant. The burden of proving the accidental nature of the plaintiff's injury and of securing the necessary fact findings remained with the plaintiff. Moulton v. Alamo Ambulance Service, Inc., 414 S.W.2d 444 (Tex.1967); Rule 279, Texas Rules of Civil Procedure.

■ The denial of defendant's Requested Special Issue No. A does not preserve for appellate review the error, if any, of the trial court in failing to include in his charge an issue on "accident." The defendant can complain of the failure to include an issue necessary to the plaintiff's case only if he has objected to the court's charge for that reason since "accident" is not an independent ground of recovery which would be waived by the failure of the plaintiff to request an appropriate issue. A request for submission is not an available alternative to an objection as a means of pointing out a defect in an issue submitted or a failure to submit where the ground of recovery is one relied on by the opposing party. Lyles v. Texas Employers' Insurance Ass'n, 405 S.W.2d 725 (Tex.Civ.App.—Waco 1966).

The defendant did not object to Special Issue No. One for the reason that it submitted "injury" rather than "accidental injury." Nor did the defendant object generally to the charge because of the failure to submit an issue on accident. This matter was included in defendant's objections to Special Issue No. Two. Paragraph II reads:

"Defendant objects to the submission of Special Issue No. 2 for the following reasons:

"   .   .   .   .

"(e) Defendant further objects to the failure to include as Special Issue No. 2 the issue tendered to the court and marked Defendant's Requested Issue No. A for the reason that the failure to submit to the jury the inquiry as to whether the injury was the result of the accident deprives this Defendant of his submission of accidental injury to the jury .   .   . and no other issue tendered by the plaintiff or included in this charge by the court allows the jury to determine whether such injury was accidental and therefore traceable to a definite time and place, and without the inclusion of Requested Special Issue A plaintiff is not entitled to a judgment, and this defendant prays the court to submit Defend-

ant's Requested Issue No. A as Special Issue No. 2, conditioned on an affirmative answer to Special Issue No. 1, in order that the defendant's theory of no accidental injury may be properly submitted to the jury."

Part (e) of Paragraph II states no proper objection to Special Issue No. 2 inquiring of producing cause. The complaint made is that the court erred in refusing to submit the special requested issue instead of Special Issue No. 2. Appellant's point of error in this court and in its Amended Motion for New Trial is that the court erred in failing to submit Defendant's Requested Special Issue No. A. There is no point in this court or in the motion for new trial complaining of the failure of the court to include the element of "accident" in Special Issue No. 1, or elsewhere in the charge, unless it is implied from the points dealing with the requested special issue. The failure to object to Special Issue No. 1 for the reason that it failed to include the element of accident is not cured by requesting a special issue on the same subject even though the requested issue may be correct. Cimarron Insurance Co. v. Price, 409 S.W.2d 601 (Tex.Civ.App.— Austin 1966, err. ref., n. r. e.). A ground of error not distinctly set forth in the motion for new trial is waived. Walsh v. Hershey, 472 S.W.2d 954 (Tex.Civ.App.— Ft. Worth 1971, err. ref. n. r. e.). The trial court did not err in refusing the requested Special Issue No. A.

Appellant's Points of Error 3, 4, and 5 complain of the action of the trial court in admitting certain deposition testimony of Dr. Larry Smith because the testimony was not conditioned upon reasonable medical probability; was not based on the facts of the case before the court; and because the doctor stated that if he had been told that the plaintiff had suffered an injury to his back prior to the incident in question, and another injury subsequent to such incident, these facts "could" affect his opinion.

■ The defendant did not object to the hypothetical question in which Dr. Smith was asked to assume certain facts on the ground that such facts were not in evidence or were contrary to the evidence. The doctor was asked to assume that the plaintiff "had worked a better part of the day unloading these bags when he began to notice the pain in his low back." The other facts recited in the question were undisputed. The doctor testified that the history recited "sounds very compatible with what he told me." The statement quoted seems to imply that he began noticing pain before he finished his work for the day. The testimony is that he first noticed pain "by the evening." It "came on slow during the whole day."

■ In the amended motion for a new trial appellant did not complain that the hypothetical question was incorrect or incomplete. Complaint was made in the motion that the question, "Is the condition that you described as chronic, in your opinion, of course, based upon reasonable medical probability? Is it related to the on-the-job injury that he related to you in his history?" was conditioned on a history which was not before the jury and possibly contained matters which were not substantiated by the testimony at the trial. An objection was made on the ground that the question gave the doctor no facts on which to base an answer because the doctor had testified that he did not have his history with him, and that it called for the doctor's speculation. The doctor had also testified that the hypothetical facts which he was asked to assume were "very compatible" with the facts stated to him by the patient. Point 4 does not present reversible error. Aetna Casualty & Surety Co. v. Scruggs, 413 S.W.2d 416 (Tex.Civ.App.—Corpus Christi 1967). Point 5 is not based on a ground of error presented in the motion for new trial and cannot properly be considered. Rule 374, T.R.C.P.

■ Appellant's principal complaint concerning the doctor's testimony is found in Point 3 and asserts that the doctor's opinion testimony was not conditioned upon

reasonable medical probability. In the motion for new trial appellant specified eight questions which it contends were improper because of the failure to require an answer based on reasonable medical probability. The answer made to each of these questions was positive and direct. There is no indication that the answer was based on possibility rather than reasonable medical probability. From his entire testimony it may fairly be gathered that the test has been met. Port Terminal Railroad Association v. Ross, 289 S.W.2d 220 (Tex. 1956); Insurance Company of North America v. Myers, 411 S.W.2d 710 (Tex. 1966); Transport Insurance Co. v. McCully, 481 S.W.2d 948 (Tex.Civ.App.—Austin 1972, err. ref'd. n. r. e.).

■ Appellant has presented a group of points complaining about the findings as to wage rates, presenting both "no evidence" and "weight and preponderance" points.

Mrs. Evans, the bookkeeper for Bayou Service Company, testified that the company supplied temporary labor to Monsanto and that the plaintiff was one of the laborers sent to that company. He earned $3.00 an hour while working there and worked at that job about three months. He had worked for Bayou for about a month in 1970 at $2.00 an hour. In March of 1971 Bayou was paying laborers $2.00 an hour. The Monsanto job did not last 210 days, so no other employee worked on that job for 210 days. She did not know any laborer who worked 210 days immediately prior to March 15, 1971, but "it is possible we could have had some on other jobs."

The plaintiff moved to Alvin, Texas, in November, 1968. His first job was with Catalyst Service, a labor contractor. He did not remember how long he worked for that company. He next went to work for the City of Alvin driving a garbage truck. He kept that job for eight months during 1969 and 1970, when he left that job he might have worked a few days with Catalyst. He worked for Malone Vacuum Trucks as a truck driver's helper. He then worked for Payne & Keller as a laborer. After that he might have worked for Catalyst again. He worked for Tindall's Concrete Service as a truck driver for two or three months. From other testimony given by the plaintiff it appears that he knew Bayou Service Company by the name Catalyst Service. He quit working for Tindall's Concrete Service about Christmas and was out of work until he went to work for Bayou Service in January. He did not remember when he began each of these jobs. There was no testimony as to how long he was out of work between jobs. He testified that he did not work 210 days out of the year immediately preceding his injury, and that he did not know anyone who did work that many days.

On cross-examination he said that he quit his job with the City of Alvin just before he went to work at Bayou in August, 1970. If this testimony is credited, it appears that he worked about five months as a truck driver during the year immediately preceding his injury. In the next three months he worked for Moline Vacuum as a truck driver's helper, for the Concrete Company as a truck driver, and for Payne and Keller as a laborer. The next three months he worked for Bayou. The jury may well have believed that the work as a truck driver was not of the same class as the work "in the employment in which he was working" at the time of the injury. The answer made by the jury to Special Issue No. 12 is fully supported by the evidence.

■ Special Issue No. 13 asked the jury: "Do you find from a preponderance of the evidence that there was not an employee of the same class as plaintiff who worked at least 210 days of the year immediately preceding March 15, 1971, in the same or similar employment in the same or neighboring place?" It was answered, "There was not."

As is reflected in the above recital, the evidence bearing on this issue was meager. The plaintiff had changed jobs a number

of times during the period in question, and may well have been widely acquainted with work conditions for common labor in the area. The extent of his knowledge and its source is not otherwise developed. His testimony was that he did not "know" anyone who had worked 210 days during the period in question. Mrs. Evans was in a position to know the work record of the employees of her company. She testified that she did not "know" anyone who worked 210 days during the period. Neither testified positively that there was no one who worked 210 days in the same or a similar employment in the same or neighboring place. Mrs. Evans testified that she had not checked her records for such an employee, and neither witness was shown to have made an investigation to determine whether there was a laborer who had worked 210 days in a similar employment in the same or a neighboring place.

The testimony in this case was substantially the same as that in I. C. T. Insurance Company v. Wineman, 308 S.W.2d 549 (Tex.Civ.App.—El Paso 1957, writ ref., n. r. e.); in that case the court affirmed the action of the trial court in holding that the evidence established as a matter of law that there were no other employees of the same class as the plaintiff who worked substantially the whole of a year immediately preceding the plaintiff's injury.

The testimony of the plaintiff and of Mrs. Evans was sufficient to require the submission of Special Issue No. 13, and to support the answer made by the jury thereto. This answer was not so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

Appellant complains of the refusal of the trial court to submit its requested Issues Nos. B and C inquiring as to the subsequent injury to plaintiff and its contributing percentage to the incapacity of plaintiff. There was evidence that on April 26, 1971, the plaintiff suffered rather severe,

sudden pain while assisting his foreman in picking up some boards. Dr. Evans stated that he had no opinion as to the extent the previous injury and the subsequent injury contributed to plaintiff's condition at the time of trial because he did not know what the two other injuries were.

Dr. Fuste saw the plaintiff on May 5, 1971, at which time plaintiff reported the incident of April 26, 1971. Dr. Fuste stated that it was his customary procedure to "refer a recurring back problem to a specialist, and this is what I did. . . ." In his report of his examination of plaintiff on May 25, he diagnosed acute muscular injury, "mild and recurring." He testified that he meant the report to show "that perhaps the site of the original injury had been reinjured." He pointed out that one injury resulted from "lifting of some fifty or fifty-five pounds and the other was with reference to lifting a few boards." He stated that this indicated to him that "perhaps this was a reinjury of the same area." He gave no testimony as to the amount or percentage that the subsequent injury contributed to present incapacity.

In Southern Underwriters v. Grimes, 146 S.W.2d 1058 (Tex.Civ.App.—San Antonio 1940, writ dism'd), the court held that Section 12c of Article 8306, Vernon's Ann. Civ.St., which by its terms applies only to a previous injury, did not apply to a subsequent injury. In St. Paul Fire & Marine Insurance Co. v. Murphree, 163 Tex. 534, 357 S.W.2d 744 (1952), the court affirmed a judgment for total and permanent disability less 55% contribution by two prior injuries and one subsequent injury. In Jones v. Pacific Employers Insurance Co., 416 S.W.2d 580 (Tex.Civ.App.—Eastland 1967, writ ref'd, n. r. e.), it was held that Section 12c was applicable to a "subsequent injury" upon the same basis and for the same reasons that it was applicable to a prior injury.

The Supreme Court construed Section 12c in Transport Insurance Co. v.

Mabra, 487 S.W.2d 704 (Tex.1972), and there said:

"In order to reduce the recovery of a workman because of a previous injury under the above statute, the insurance carrier must prove (1) that the previous injury was compensable, (2) contributed to the present incapacity, and (3) the amount or percentage of such contribution . . ."

Appellant did not request an issue to determine whether the injury of April 26, 1971, was a "compensable" injury. While the issues requested were in the form recommended in Texas Pattern Jury Charges, the burden of proof was placed upon the plaintiff. The Mabra case states that the burden of proof is on the Insurance Carrier. Millers Mutual Insurance Co. of Texas v. Monroe, 495 S.W.2d 625 (Tex.Civ. App.—Waco 1973). We hold that the issues were not in proper form, and that the trial court did not err in refusing them. We do not consider that there is any evidence on the amount or percentage contributed to the plaintiff's incapacity at the time of trial by the subsequent injury.

The amended motion for new trial contained this paragraph:

"During final arguments to the jury the plaintiff's attorney committed reversible error by repeatedly advising the jury of the effect of their answers to the Special Issues, over the repeated objections of counsel for the Defendant. That the argument constituted prejudicial error which obviously could not be corrected by an instruction of the court and for this reason a new trial should be granted."

Appellant's Points 17–21 complain of the argument made by plaintiff's counsel, but none of the points complain that the argument advised the jury of the effect of their answers to the Special Issues. These points were grouped in the brief. The only argument quoted pertaining to advising the jury of the effect of their answers occurred in the discussion of the issue on "fair wage." The attorney suggested $186.00 per week. He then said:

"Now let me reiterate what I told you on voir dire. This doesn't mean he gets that much per week. Far from it. All this is is to give His Honor a base to work with in calculating the small weekly payments which he gets if you answer the other issues. Please don't leave this courtroom thinking that Joe Contreras will get $186.00 a week if you find that."

■ An objection that he was "arguing the effect" was overruled. We consider the argument improper. The objection should have been sustained. However, a consideration of the entire record leads to the conclusion that the error was not such as was reasonably calculated to, and probably did, cause the rendition of an improper judgment in the case. Rule 434, T.R.C.P.

■ These points, insofar as they complain about argument unrelated to the question of whether the jury was advised of the effect of their answers, have not been properly preserved for appellate review. St. Louis Southwestern Ry. Co. v. Gregory, 387 S.W.2d 27 (Tex.1965).

The judgment of the trial court is reformed by reducing the amount thereof from the sum of $13,730.41 to the sum of $12,217.41, and, as reformed, is affirmed.