James Z. HARRISON, Appellant,

v.

TEXAS EMPLOYERS INSURANCE ASSOCIATION, Appellee.

No. 09–87–105 CV.

Court of Appeals of Texas, Beaumont.

March 10, 1988.

Rehearing Denied March 30, 1988.

Don Bush, Townsley, Bush, Lewis & Ramsey, Beaumont, for appellant.

R. Lyn Stevens, Weller, Wheelus & Green, Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

Worker's compensation case. Our previous opinion of February 4, 1988, is withdrawn. This opinion is substituted. The workman–Appellant recovered a judgment against Texas Employers Insurance Association [T.E.I.A.] for a general injury. The jury's verdict found:

1. That the injury received by James Harrison on or about May 21, 1985, was a producing cause of any total incapacity;

    1A. That the beginning date of total incapacity was July 16, 1985;

    1B. That the ending date of the duration of total incapacity was November 20, 1985.

2. That the injury he received on May 21, 1985, was a producing cause of any partial incapacity;

    2A. That the beginning date of partial incapacity was November 21, 1985;

2B. That the duration of partial incapacity was permanent;

2C. That Harrison's average weekly earning capacity, during partial incapacity, was $514.80;

3. That Harrison's average daily wage earned during the days he actually worked in the year immediately preceding May 21, 1985, was $120;

4. That Harrison's back injury, which occurred on or about August, 1982, did contribute to the incapacity.

5. That Plaintiff's back injury of August, 1982, has contributed to the incapacity in the percentage of 70%.

Appellant's recovery was reduced by 70%, based upon the jury's finding of contribution to his general injury because of a prior, compensable injury. The Appellant's brief candidly concedes:

"This appeal focuses on the evidence regarding the prior compensable injury...."

The major, frontal attack made upon the judgment and upon the 70% reduction is that there was "no evidence to support said finding." This is clearly a "no evidence" point.

Appellant, Harrison, had sustained several injuries while working for his employer, North Star Steel. He had injured his back on the job in August, 1982; March, 1984, and May, 1985, and there were some other instances or, perhaps, injuries, on the job, that periodically aggravated the condition in his low back. These facts are conceded by the Appellant.

The May, 1985, injury was the basis of this suit for worker's compensation. The carrier pleaded a defense under *TEX.REV. CIV.STAT.ANN. Art. 8306, sec. 12c* (Vernon Supp.1988), requesting a credit for conditions arising from prior compensable injuries. *Article 8306, sec. 12c*, entitled "Subsequent injury; Second Injury Fund", provides:

"Sec. 12c. (a) If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity *to which both injuries or their effects have contributed,* the association shall be liable because of

such injury only for the compensation to which the subsequent injury would have entitled the injured employee *had there been no previous injury;* provided that there shall be created a fund known as the 'Second Injury Fund,' hereinafter described, from which an employee who has suffered a subsequent injury shall be compensated *for the combined incapacities resulting from both injuries....*" (Emphasis added)

This legislative dictate specifically provides that only the compensation to which the subsequent injury would have entitled the employee to receive, had there been no previous injury or injuries, is recoverable. Clearly the "Second Injury Fund" pays compensation for the combined incapacities resulting from prior injuries and present incapacity. Further, the brief of the Appellant takes the position that the primary medical evidence, on this issue, came from Dr. L.C. Dunlop and Dr. Ralph Mancini. The carrier's major thrust, to support its *Art. 8306, sec. 12c* defense, stressed the effects of the August, 1982, injury.

The Appellant's attack is clearly upon Jury Question No. 5 reading:

"5. Find the percentage, if any, that Plaintiff's back injury of August, 1982, has contributed to the incapacity found by you. (Answer by giving a percentage.)"

Answer: "5. 70%"

Dr. Dunlop's testimony was:

Q Doctor is there any way that you can give the jury a benefit by attributing any sort of percentage of the 80 or 90 percent or whatever major part you classify that as?

"A Based on the things I just stated, I would say in *excess of 75, 80 percent of his problem, probably more.*

"Q *Is related to the 1982 injury?*

"A *I would think so, yes, sir.*

"Q *And that is based on reasonable medical probability?*

"A *Yes, sir.*" (Emphasis added)

Dr. Mancini was the treating physician of the Appellant. He testified that the August, 1982, injury was the single, greatest

factor in any incapacity of the Appellant. The testimony was:

"Q Is Dr. Dunlop's statement in his deposition, that in excess of 75 to 80 percent, probably more, is related to the August, '82 injury in agreement with your opinion, that the August, '82 injury is the single greatest factor in any incapacity Mr. Harrison has?

"A The numbers aside, *it concurs with my opinion as to the single greatest. All that means is it's greater than 50 percent.*" (Emphasis added)

Then, Dr. Mancini testified further:

"... But do you agree, based on your knowledge of Mr. Harrison, that due to the herniated disk that he suffered in August, '82—do you agree with Dr. Dunlop's professional medical opinion, that the herniated disk he suffered in August of '82 contributed at least 75 percent to any present incapacity he has?

. . . .

"Q Doctor, can you answer the question?

"A I really can't answer the question any differently than before. *His estimate is reasonable,* but I don't care to put a percentage on it."

. . . .

"Q Do you defer to Dr. Dunlop's professional medical opinion, since he was the treating medical physician beginning in '82 through the present time or through September of '85, to the relative percentage of incapacity Mr. Harrison may have in regard to the August '82 injury?

"A He's willing to put a percentage on it. I am not. *I do think that a person who has seen the patient over that span of time might be in a better position than myself to commit himself.*

"Q Okay. Thank you. Now, Doctor, are your opinions that you've expressed to me and the opinions you're going to express to me based on reasonable medical probability?

"A Yes, sir." (Emphasis added)

We perceive that both counsel were endeavoring to follow *Transport Insurance*

*Company v. Mabra,* 487 S.W.2d 704 (Tex. 1972). There, the court wrote, at page 707:

"In order to reduce the recovery of a workman because of a previous injury under the above statute, the insurance carrier must prove (1) that the previous injury was compensable (2) contributed to the present incapacity, and (3) *the amount or percentage of such contribution.* ..." (Emphasis added)

The "above statute" was, of course, *Art. 8306, sec. 12c.*

It is correct that, upon cross-examination, Dr. Dunlop conceded that to put an *exact mathematical percentage* would amount to guesswork or speculation, but Dr. Dunlop, nevertheless, maintained and insisted that a major portion of the present incapacity of Appellant was probably due to the original injury, referring to the injury of August of 1982. This testimony, we determine, went to the weight of Dr. Dunlop's opinion.

■ Bearing in mind *Art. 8306, sec. 12c* and *Transport Insurance Company, supra,* we decide that Dr. Dunlop's testimony was admissible and had probative force. Dr. Mancini's testimony does not eviscerate Dr. Dunlop's testimony or other evidence in the case concerning this issue. Remembering that the Appellant clearly presents a "no evidence" point, we overrule the same, having applied the proper standards of review. In our analyzing the "no evidence" point, it is our duty to view the evidence in its most favorable light, considering only the evidence and reasonable inference to be drawn therefrom in support of a jury finding. *Transport Insurance Company, supra.* We are not to consider the contrary evidence. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Potter v. Garner,* 407 S.W.2d 537 (Tex.Civ.App.—Tyler 1966, writ ref'd n.r.e.); R. Calvert, "'No Evidence' and 'Insufficient Evidence' Points of Error", 38 TEXAS L.REV. 361 (1960); W. Garwood, *"The Question of Insufficient Evidence on Appeal",* 30 TEXAS L.REV. 803 (1952). In brief, we conclude the special issues submitted were for

the jury to determine. The jury did so without error; we cannot overturn them.

The Appellant argues that the trial court erred in refusing to permit what he describes as a "full cross-examination of Dr. Dunlop regarding 'informal' meetings with defendant's attorney." The main thrust of the Appellant's argument is that Dr. Dunlop had several informal, ex parte, meetings with the carrier's attorney in which confidential, physician-patient privileges were violated. Neither the Appellant nor his attorney was present. Further, Appellant says that Dr. Dunlop did not have authorization to carry on such discussions.

■ The excluded testimony is:

"Q  Do you have a medical release from Mr. Harrison to discuss his treatment with Mr. Stevens?

"A  I don't know if I do or not. I would have to search through these. I don't know whether I do or not.

"Mr. Stevens: Doctor, I will save you the time. I don't think you have a release.

"The Witness: I haven't seen one.

. . . .

"Q  I am just trying to find out if you had any authority or permission from Mr. Harrison to do that.

"A  I don't recall. I—"

"Q  ... My point is that you had no permission from my client in writing or orally to sit down with the insurance company's attorney and discuss this case off the record. Is that correct?

"A  That's correct."

Because the scope of cross-examination has been, and is, traditionally, broad and wide-ranging in Texas, we do not perceive why this cross-examination testimony was not placed before the jury. 1 R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL Sec. 600 (Texas Practice 3rd ed. 1980). Generally, the Texas practice has been that the scope and extent of cross-examination is wide open and permits the cross-examination to extend to *any matter relevant to the issues.* The *only limitation is one of relevancy* and the concepts of relevancy have been extended to permit inquiry into

the situation of the witnesses, with respect to the parties, and to the subject matter of the litigation as well as the witness' interest, bias, motives, inclinations and prejudices and his means of obtaining accurate knowledge of the facts to which he testifies and the manner in which he uses these means. 1 R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL Sec. 600 (Texas Practice 3rd ed. 1980).

Nevertheless, since the chief purpose of cross-examination is to test the accuracy and the credibility of the witness, it is obvious that the *manner of cross-examination and its extent must rest* in the sound discretion of the trial judge. 1 R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL Sec. 592 (Texas Practice 3rd ed. 1980).

Dr. Dunlop was referred to openly and with some frequency as the "company doctor" at trial. In fact, Dr. Dunlop was called the "company doctor" and was described as the company doctor for North Star Steel and also the company doctor for hundreds of companies. The Appellant testified that he had requested permission to see the company doctor for his low back condition. He was seen at the Beaumont Industrial Clinic by Dr. Dunlop, the doctor of his employer. Dr. Dunlop recommended that Appellant go to Houston and see a specialist, a Dr. Ralph Mancini. Several exhibits demonstrated that Dr. Dunlop was treating the Appellant as the physician for North Star Steel, Harrison's employer.

■ To obtain a reversal of a judgment, based upon the alleged error of a trial court in *the exclusion of testimony,* the Appellant must first show that the trial court's ruling was, in fact, in error. Next, the Appellant must show that error was reasonably calculated to cause and probably did cause a rendition of an improper judgment in the case. *Hernandez v. Hernandez,* 611 S.W.2d 732 (Tex.Civ.App.—San Antonio 1981, no writ); *Bristol–Myers Co. v. Gonzales,* 548 S.W.2d 416 (Tex.Civ. App.—Corpus Christi 1976), rev'd on other grounds, 561 S.W.2d 801 (Tex.1978).

■ In summary, we decide that the court's exclusion of this evidence was er-

ror, but that this exclusion was not reasonably calculated to cause, and probably did not cause, the rendition of an improper judgment in this case. Further, we do not perceive that the trial judge abused his sound discretion in excluding the evidence complained of in this third and last error.

The concurrence cites *Schaefer v. Texas Employers' Ins. Ass'n.* 612 S.W.2d 199 (Tex.1981) and *Western Casualty and Surety Company v. Gonzales*, 518 S.W.2d 524 (Tex.1975). We think that we have followed *Schaefer, supra* in deciding the "no evidence" point of Appellant. We recognize this "no evidence" point is a question of law and, in our review, we consider only that evidence and the reasonable inferences therefrom, being viewed in their most favorable light to support the jury finding or answer under attack. We, of course, are required to reject all evidence or inferences to the contrary.

As we view Dr. Dunlop's testimony, the same had probative force. *Western Casualty and Surety Company, supra.* The cross-examination, we perceive, did diminish the doctor's expert testimony *but went to the weight and value to be given the same.* We agree with, and follow, *Stodghill v. Texas Emp. Ins. Ass'n.*, 582 S.W.2d 102 (Tex.1979), to the effect that a medical doctor, testifying as an expert, need not use the exact "magical" words of "reasonable medical probability", if the expert's testimony is adequate and sufficient under the total circumstances of his evidence to show that was the substance of what the medical doctor was stating. We conclude that Dr. Dunlop's testimony would survive and repel the attack against the admissibility of his expert evidence even if he had failed to use "the magic words". We decide that it was in the province of the jury to determine whether Dr. Dunlop was simply using "the magic words", and, even if so, what value, weight and credibility should be given to Dr. Dunlop's testimony.

We perceive of no reversible error. We overrule the Appellant's third and last point of error and we affirm the judgment below.

AFFIRMED.

BURGESS, Justice, concurring.

The majority holds on the first point that Dr. Dunlop's testimony was admissible. I respectfully disagree. Our supreme court has held on many occasions that it is the substance of the testimony, not its form, that is determinative. *Schaefer v. Texas Employers' Ins. Assn.*, 612 S.W.2d 199, 202 (Tex.1981), *Western Cas. and Sur. Co. v. Gonzales*, 518 S.W.2d 524, 526 (Tex.1975). If there is no magic in the absence of the words "reasonable medical probability," see *Stodghill v. Texas Employers Ins. Assn.*, 582 S.W.2d 102, 105 (Tex.1979), then there can be no magic when the words are present. It is apparent to this writer that Dr. Dunlop was simply using the magic words, but that his opinion was, as he candidly admitted, nothing but "guesswork or speculation." I am constrained to concur because there was competent evidence from Dr. Mancini concerning the effect of the second injury. Therefore, this is some evidence from which the jury could find the answer of 70 percent. Appellant's point of error being a no evidence point must, therefore, be overruled. Therefore, I concur in the result but not the reasoning.