Margaret A. WILSON, Appellant,

v.

KLEIN INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 01–89–01025–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 29, 1991.

Rehearing Overruled Sept. 19, 1991.

Susan A. Allinger, Houston, for appellant.

Joseph A. Garnett, Houston, for appellee.

Before SAM BASS, COHEN and DUNN, JJ.

## OPINION

COHEN, Justice.

A jury found for appellant in this worker's compensation case, but it also found that 90% of her total and permanent disability was due to three prior work-related injuries. Consequently, the trial court awarded judgment for 10% of damages appellant would have otherwise received.

The main question presented is whether the jury findings that prior injuries contributed 90% of appellant's disability can be upheld without expert testimony to establish at least a reasonable percentage range within which the prior injury contributed to the disability. We hold that expert testimony fixing a percentage range by which prior injuries contributed to the disability is required to support a reduction of benefits under article 8306, section 12c. Because there was no such evidence in this case, we hold the jury finding on contribution of prior injuries should have been disregarded. Consequently, we reverse and render judgment for appellant for full benefits.

Margaret Wilson worked as a cook for appellee, Klein Independent School District. She twisted her back on October 22, 1985, while working at Doerr Intermediate School, and could no longer work. That injury is the basis for this award.

Wilson suffered four back injuries before October 22, 1985, three of which occurred on the job. On February 7, 1983, Wilson "pulled something in her lower back" while at work lifting large pizza pans. She was not hospitalized, was off work a week, and did not file a compensation claim. She injured her back on January 24, 1984 at Kaiser Elementary School. She was hospitalized for 15 days and missed work for three months, and appellee, self-insured under the Workers' Compensation Act, agreed to pay her medical bills for two years. Appellant continued to receive treatment for that injury. Although appellant returned to work, she stated in answer to an interrogatory that she "did not recover" from her injury of January 24, 1984 and that the October 22, 1985 injury "intensified the previous injury." On November 13, 1984, Wilson was hurt in an off-duty automobile accident and was hospitalized for three days, complaining of back and leg pain. The diagnosis was "acute exacerbation" of her "chronic condition." On May 29, 1985, she injured her back at work while "stacking materials" and filled out a compensation claim form. She did not report the injury to her doctor, and no claim was filed. The only compensation Wilson received for any of these injuries was the two years of medical payments for the January 1984 injury. She did not miss more than seven days of work at any one time, except in January 1984 and October 1985.

After the last injury, Wilson's doctor diagnosed her condition as arachnoiditis, scar tissue around nerves in the spinal column. He testified this condition was usually found in post-operative patients and surgery would worsen the scarring. The prognosis was permanent or long-term incapacity. He testified she could not work due to the incapacity, which was "triggered" by the October 22, 1985 injury. That was "the straw that broke the camel's back," he stated, which "probably ... triggered arachnoiditis." The doctor said Wilson could not pass a pre-employment physical.

At trial, Wilson denied injuries other than those of January 24, 1984 and October 22, 1985, but this was impeached by her medical records. They showed she had been in pain since the January 1984 injury and mentioned previous injuries and possible arachnoiditis before October 22, 1985. Three doctors examined myelograms of appellant's back taken before and after October 22, 1985. Dr. Norton found "the subarachnoid sac from the L4–5 level ... totally unchanged in appearance in comparison to the exam of 2–13–84." Dr. Walters concluded the myelograms "revealed the same arachnoiditis changes that were noted before." Dr. Wendenberg concluded the second myelogram showed the same appearance as the first.

Wilson's supervisor testified she was an average worker until October 22, 1985. She saw Wilson's knee buckle and saw her try to catch herself with her other knee when she fell. Appellee's Food Service Director testified she would not hire anyone in Wilson's post-October 22, 1985 condition.

Appellee's pleadings contended Wilson's prior injuries either contributed to or solely caused her incapacity. A jury question, submitted over Wilson's objection, asked whether "the prior injuries, if any, contributed to the present incapacity and, if so, the percentages of incapacity contributed by each...." The jury found:

(1) the injury of October 22, 1985, was in the course and scope of employment and caused total and permanent incapacity beginning that day;

(2) the injuries at work of February 7, 1983, January 24, 1984, and May 29, 1985, contributed 10%, 60%, and 20%, respectively, to the incapacity, a total of 90%.[1]

The trial court awarded Wilson 10% of total and permanent disability benefits, in accordance with the jury findings.

Wilson's first three points of error contend the evidence is legally and factually

---

**1.** The November 13, 1984 car accident was not included, even though the jury heard evidence of it, because it was not a work-related injury.

insufficient to support the jury's three findings of percentage contribution by prior injuries; thus, she contends the trial court should have disregarded those findings.

■ In reviewing legal sufficiency points, we consider only the evidence and inferences supporting the finding, viewed in the most favorable light, and disregard all conflicting evidence. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). If there is any probative evidence, more than a scintilla, to support the finding, the point must be overruled. *Id.* Factual insufficiency exists when the evidence supporting a finding is so weak it should be set aside, or when considered with the evidence opposing the fact, the finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. *Id.* Upon review of factual sufficiency, we consider all of the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Wilson had to prove 1) an injury, 2) while in the course of employment, and 3) the extent and duration of the injury. *Texas Employers' Ins. Ass'n v. Page*, 553 S.W.2d 98 (Tex.1977). A claimant's recovery can be reduced pursuant to TEX.REV.CIV.STAT. ANN. art. 8306, section 12c (Vernon Supp. 1991),[2] which provides:

(a) If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury; ...

■ Therefore, when a prior compensable injury contributes to a subsequent injury, the insurer owes compensation only for the percentage of incapacity caused by the "new" injury. *Hines v. Aetna Casualty & Sur. Co.*, 754 S.W.2d 803, 805 (Tex.App.— Houston [1st Dist.] 1988, writ denied).

Section 12c is an apportionment scheme that abolished the "full responsibility" rule

whereby an insurer was liable for the entire disability, even that caused by a preexisting disability. *Liberty Mut. Ins. Co. v. Peoples*, 595 S.W.2d 135, 138–39 (Tex. Civ.App.—San Antonio 1979, writ ref'd n.r.e.). The apportionment rule was adopted to prevent double recoveries and to encourage the employment of injured workers who would otherwise pose a greater risk of liability to an employer. *Id.* n. 1. The legislature repealed the percent contribution defense in 1971, only to reinstate it in 1977. *Id.*

Appellee contends that appellant did not suffer an injury causing any incapacity on October 22, 1985 because the myelograms showed the same back condition before and after the accident. Appellee contends this evidence supports the verdict because the jury could have inferred that appellant's condition was 90% (or wholly) caused by prior injuries. We disagree. The issue is not whether appellant's myelogram changed. It is whether her ability to work changed. It is undisputed that before October 22, 1985 appellant was an average worker. After that date, she could neither work nor pass an employment physical. Appellee relies exclusively on *Lumbermen's Mutual Casualty Company v. Martinez*, 763 S.W.2d 621 (Tex.App.—Eastland 1989, writ denied), for the proposition that such evidence will allow a jury to fix a specific percentage of disability. As explained below, we do not believe *Martinez* stands for that proposition and also consider it to be factually distinguishable.

■ The contribution of prior or subsequent injuries to the claimant's present incapacity is an affirmative defense. In order to reduce the worker's recovery under sections 12c, the insurer must prove (1) the prior injury was compensable; (2) it contributed to the present disability; and (3) the amount or percentage of such contribution. *Transport Ins. Co. v. Mabra*, 487 S.W.2d 704, 707 (Tex.1972). The question here is whether there must be direct evidence of the percentage of contribution

---

**2.** Act of May 28, 1977, 65th Leg., R.S., ch. 801, § 1, 1977 Tex.Gen.Laws 2004, *repealed by* Act of December 11, 1989, 71st Leg., 2nd, C.S., ch. 1,

§ 16.01(7) 1989 Tex.Gen.Laws 1, 114, (current version at TEX.REV.CIV.STAT.ANN. art. 8308–2.14 (Vernon Pamph.1991)).

of prior injuries to the present incapacity, or whether the trier of fact may decide percentages of contribution without such evidence.

■ The supreme court in *Mabra* did not state how the insurer's burden of proof on percentages could be carried. Texas intermediate appellate courts, including this one, have repeatedly held that evidence similar to that in this case constituted no evidence of the amount or percentage of contribution required in *Mabra*. A strikingly similar case is *Transamerica Insurance Co. of Texas v. Hernandez*, 769 S.W.2d 608 (Tex.App.—Corpus Christi 1989, writ denied). The jury found that a prior injury had contributed 90% to Hernandez' incapacity. Two of Hernandez' doctors testified Hernandez did not suffer an injury in January 1985, as he claimed; rather, his complaints were due to prior injuries or to age. Despite this testimony, the trial court disregarded the jury's answers on contribution and granted full worker's compensation benefits without reduction. *Id.* at 610–12. The Corpus Christi Court of Appeals affirmed, rejecting the insurer's contention that the medical expert testimony (that there was no January 1985 injury) meant that the *entire* incapacity was caused by the prior injury, an inference that would support the jury's finding of 90% contribution. The court stated:

> In order to reduce appellee's recovery because of a prior injury, appellant had to prove also the amount or percentage of such contribution. *Charter Oak Fire Ins. Co. v. Barrett*, 655 S.W.2d 333, 337 (Tex.App.—San Antonio 1983, no writ). An expert need not testify to the exact percentage of the disability attributed to the prior injury by the jury, as long as he provides the jury with a reasonable percentage range within which that injury contributed to the disability. *See Harrison v. Texas Employers Ass'n*, 747 S.W.2d 494, 497 (Tex.App.—Beaumont 1988, writ denied).

.     .     .     .     .

Since there is no testimony even of a range of percentages on which the jury could have based its finding of a 90%

contribution, the trial court correctly disregarded the jury's findings on contribution of a prior injury.

*Id.* at 611–12.

In *Hartford Accident & Indem. Co. v. Contreras*, 498 S.W.2d 419 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.), the insurer claimed the trial court erred by not submitting a jury question on contribution by prior injury under section 12c of article 8306. The insurer claimed evidence supported that issue because a doctor testified that Contreras suffered a "reinjury" of the same site of an earlier injury. *Id.* at 427. This Court rejected that contention on both procedural and substantive grounds. It first held that the issues were not in correct form, but it went on to state:

> We do not consider that there is any evidence on the amount or percentage contributed to the plaintiff's incapacity at the time of trial by the subsequent injury.

*Id.* at 428.

Other courts have made similar holdings. *Texas Employer's Ins. Ass'n v. Gomez*, 756 S.W.2d 80, 81–82 (Tex.App.—El Paso 1988, no writ) (trial judge correctly disregarded jury's finding that prior compensable injury contributed 100% to worker's incapacity, despite doctor's evidence that the incapacity "was the result of the old injury," where plaintiff with plate and screws in his leg from earlier injury "sustained a stress fracture which passes through one of the screw holes where the hardware was removed."). The El Paso Court held the doctor's quoted statement was no evidence "as to the amount of percentage of contribution the pre-existing injury might have contributed...." *Id.* at 82; *Charter Oak Fire Ins. Co. v. Barrett*, 655 S.W.2d 333, 337–38 (Tex.App.—San Antonio 1983, no writ) ("Even if ... the prior back injury contributed to plaintiff's present incapacity, the record contains no evidence concerning the percentage of contribution."); *Miller's Mut. Fire Ins. Co of Texas v. Monroe*, 495 S.W.2d 625, 626–27 (Tex.Civ.App.—Waco 1973, ref. n.r.e.).

Two recent cases found evidence justified a reduction due to a prior injury where

expert testimony fixed a reasonable percentage range of contribution. In *Harrison v. Texas Employer's Insurance Association*, 747 S.W.2d 494 (Tex.App.—Beaumont 1988, writ denied), the court upheld a finding of 70% contribution, where one doctor testified the prior injury contributed "75%, 80% of his problem, probably more," and the other testified the prior injury was the "single greatest [factor] ... greater than 50%." *Id.* at 496–97. There is no such testimony in this case.

Finally, in *Lumbermen's Mutual Casualty Co. v. Martinez*, 763 S.W.2d 621 (Tex. App.—Eastland 1989, writ denied), the jury found 50% contribution by a prior injury, but the trial court disregarded the finding and rendered judgment for total and permanent benefits. The appellate court found evidence to support the jury's finding unlike any that is present in this case. Specifically, one doctor testified that Martinez was "100% incapacitated from his prior injury," and another testified that the second injury was a "recurrence" of the first. *Id.* at 623. Moreover, Martinez himself testified that his prior injury kept him from performing the usual tasks of a workman and that he had to get a job accompanied by his wife so that the two of them together could perform the usual tasks required of a single worker. *Id.* Evidence showed that Martinez had not had a steady job for 17 years from the time of the earlier injury until the more recent one. These differences distinguish *Martinez* because here, no expert witness fixed any range of percentage and evidence showed Wilson was an "average" employee before this injury. There is language in *Martinez* stating that a jury may find a percentage of contribution without expert testimony fixing a reasonable range of percentages. *Id.* at 622–23. We consider that language unnecessary to the decision, because in *Martinez*, expert testimony set a percentage range (100%), and the worker admitted he was disabled before the accident.

The *Martinez* opinion states:

*Contreras, Monroe, Barrett,* and *Gomez*[3] do not hold that there must be

medical opinion testimony to support the finding of the amount of contribution. In those cases, it appears that there was a complete absence of evidence, medical and nonmedical, to support a finding or submission of an issue on the amount of contribution.

*Id.* at 623.

We disagree with this description of *Contreras* and *Gomez*. In both cases, physicians gave evidence that the injury was a "reinjury" and "the result of an old injury." *Contreras,* 498 S.W.2d at 427; *Gomez,* 756 S.W.2d at 81. Likewise in *Hernandez,* the testimony of two physicians was held insufficient on appeal. 769 S.W.2d at 611–12. The *Martinez* opinion also states: "*Contreras* did not consider whether there was evidence of probative value to support the 'cluster' of [contribution] issues." *Id.* at 623. We have quoted above a statement to the contrary in *Contreras.* 498 S.W.2d at 428. Finally, *Martinez* states, "[T]here is no direct medical opinion testimony of the exact percentage the prior injury contributed ...," but it also states, "Dr. Terrell testified that Martinez was 100% incapacitated *from his prior injury.*" 763 S.W.2d at 623. (Emphasis added.) Another doctor testified to the same effect. *Id.* This constitutes direct medical opinion testimony of the percentage that Martinez' prior injury contributed. There is no such evidence in the present case.

■ We hold that there is legally and factually insufficient evidence to support the jury findings in question 10 as to specific percentages of contribution to Wilson's incapacity; therefore, the trial court erred in denying her motions to disregard question 10 and for new trial.

Points of error one, two, and three are sustained.

■ The fourth and fifth points of error contend that because the evidence is legally and factually insufficient to support the percentage findings in question number 10, we should disregard the jury's finding in

---

**3.** All are cited above.

question nine that the prior injuries contributed to appellant's incapacity. We agree. Our ruling on points of error one, two, and three renders the jury's answer to question nine immaterial.

Points of error four and five are sustained.

In points of error six and eight, Wilson contends the evidence is legally and factually insufficient to support the deemed finding under questions nine and ten that the prior injury of February 7, 1983, was a compensable injury. We need not reach these points of error because of our decision to sustain points of error one through five. We note, however, that Wilson testified she was hurt at work on that date and was "off for a week." This constitutes evidence of a compensable injury. *TEIA v. Dryden,* 612 S.W.2d 223, 224 (Tex.Civ. App.—Beaumont 1980, writ ref'd n.r.e.); TEX.REV.CIV.STAT.ANN. art. 8306, § 6.

In her seventh and ninth points of error, Wilson contends the evidence is legally and factually insufficient to support the deemed finding under questions nine and ten that her prior injury of May 29, 1985, was a compensable injury. We need not reach these points because of our decision on points one through five. We note, however, that appellee's exhibit four was a compensation claim form signed by Wilson on July 12, 1985, claiming an injury at work on May 29, 1985, for which she began losing time on May 31, 1985, and stating she had not returned to work as of July 12, 1985. This constitutes probative evidence of a compensable injury, and there is no evidence to the contrary.

The tenth point of error contends the trial court erred in not awarding prejudgment interest of 4%, as allowed by TEX.REV. CIV.STAT.ANN. art. 8306a (Vernon 1967)[4]. Appellee concedes that Wilson was entitled to prejudgment interest, but claims she received it and has attached as an exhibit to its brief its calculations demonstrating the award of prejudgment interest. In light of the fact that the prejudgment interest fig-

ure will be significantly different based on our rendition of judgment for total and permanent benefits as a result of our sustaining points of error one through five, we will sustain point of error 10 and remand the case to the trial court for determination of the correct amount of damages, unless the parties can agree on the amount of total damages and so advise us within 15 days of this opinion.

Point of error 10 is sustained.

Appellee brings two cross-points of error. In cross-point one, it contends there is no evidence or insufficient evidence to support the jury's answer that appellant sustained an injury causing incapacity on October 22, 1985.

Appellee has not directed us to a place in the record where these contentions were preserved. TEX.R.APP.P. 74(d), (f). *Salinas v. Fort Worth Cab & Baggage Co., Inc.,* 725 S.W.2d 701, 704 (Tex.1987). Moreover, appellee filed a motion to render judgment, which requested the trial court to award benefits to Wilson in accordance with the jury's verdict. Regarding the challenge to the factual sufficiency, that complaint was not preserved by a motion for new trial. TEX.R.CIV.P. 324(b); TEX. R.APP.P. 52(d). Nothing is presented for review.

Cross-point of error one is overruled.

In cross-point two, appellee contends the judgment should be reformed to terminate postjudgment interest after the date it tendered payment of the judgment, June 1, 1989. In light of our decision to reverse the judgment, this contention is moot. Moreover, appellee has not pointed out that it requested and was denied such relief in the trial court. TEX.R.APP.P. 52(a); 74(d), (f). Cross-point two is overruled.

The judgment of the trial court is reversed, and judgment is rendered that appellant receive total and permanent benefits and appropriate prejudgment interest. We will render judgment for that amount if the parties can agree on the amount within

---

**4.** Act of May 27, 1931, 42nd Leg., R.S., ch. 248, 1931 Tex.Gen.Laws 415, *repealed by* Act of December 11, 1989, 71st Leg., 2nd, C.S., ch. 1,

§ 16.01(8) 1989 Tex.Gen.Laws 1, 114, (current version at TEX.REV.CIV.STAT.ANN. art. 8308–1.04 (Vernon Pamph.1991)).

15 days from this opinion. Otherwise, we will remand the cause to the trial court for determination of damages.

