ACCEPTED
13-15-00348-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
11/13/2015 5:44:39 PM
Dorian E. Ramirez
CLERK

No. 13-15-00348-CV

**In the Court of Appeals for the Thirteenth Court of Appeals District**
**Corpus Christi, Texas**

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
11/13/2015 5:44:39 PM
DORIAN E. RAMIREZ
Clerk

**TOTAL E&P USA, INC.**
*Appellant*,

**v.**

**MO-VAC SERVICES COMPANY, INC.**
*Appellee*.

ON APPEAL FROM THE 275TH JUDICIAL DISTRICT COURT,
HIDALGO COUNTY, TEXAS

Trial Court Case Number C-023-05-E

**AMENDED REPLY BRIEF OF APPELLANT TOTAL E&P USA, INC.**

ELLIS, KOENEKE & RAMIREZ, L.L.P.
Edmundo O. Ramirez
State Bar No. 16501420
Email: eor@ekrattorneys.com
Minerva I. Zamora
State Bar No. 24037765
Email: miz@ekrattorneys.com
1101 Chicago Ave.
McAllen, Texas 78501
Telephone: (956) 682-2440
Facsimile: (956) 682-0820
*Counsel for Appellant Total E&P USA, Inc.*
Oral Argument Requested

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................. ii

INDEX OF AUTHORITIES........................................................................iv

STATEMENT ON ORAL ARGUMENT ...............................................vi

ISSUES PRESENTED................................................................................vi

I. The trial court abused its discretion by allowing Mo-Vac's counsel to introduce evidence that was irrelevant, inadmissible, and highly prejudicial through impeachment on direct examination of Edmundo Ramirez, who was not offering any expert testimony in this matter, and such admission of evidence was calculated to cause and probably did cause the rendition of an improper judgment..............................................................vi

II. The trial court abused its discretion by entering a final judgment on the jury's verdict because the jury's verdict was not supported by sufficient evidence and was grossly excessive ................................................................vi

STATEMENT OF FACTS .........................................................................2

SUMMARY OF THE ARGUMENT ......................................................6

ARGUMENT ...............................................................................................7

I. By Allowing Mo-Vac's Counsel to Question Edmundo Ramirez (Who Repeatedly Stated that he Was Not Offering any Expert Opinion in this Case) Regarding the Expert Testimony he Gave on Attorneys' Fees in a Wholly Unrelated Matter, the Trial Court Admitted Evidence that Was Completely Irrelevant, Inadmissible, Served No Other Purpose than to Confuse and Mislead the Jury, and Was Highly Prejudicial......................7

 A. Mo-Vac's Line of Questioning Regarding the Expert Opinion of Edmundo Ramirez Rendered in a Completely Unrelated Case Was Irrelevant ..........................................................................7

B. Admission of Mr. Ramirez's Testimony Regarding his Opinion of Reasonable Attorneys' Fees in a Wholly Separate and Unrelated Case Was Not Harmless Error ....................................................12

C. Admission of Mo-Vac's Questioning of Mr. Ramirez Regarding the Separate, Unrelated *Playboy* Case Was Unfairly Prejudicial .............13

II. The Amount of Attorneys' Fees Awarded by the Jury and Entered in the Court's Final Judgment Was Not Supported by Sufficient Evidence and Was Grossly Excessive as a Matter of Law ..............................................15

A. The Evidence Presented at Trial Was Insufficient to Support the Award of Attorneys' Fees ..................................................................15

B. The Award of Attorneys' Fees for the Sole Surviving Claim of Breach of Confidentiality Agreement Was Grossly Excessive as a Matter of Law ..........................................................................................24

PRAYER ....................................................................................................30

CERTIFICATE OF COMPLIANCE .........................................................32

CERTIFICATE OF SERVICE .................................................................32

APPENDIX ...............................................................................................33

# INDEX OF AUTHORITIES

## <u>CASES</u>

*Duinick Bros. v. Howe Precast, Inc.*, No. 4:06-CV-441, 2008 WL 4411641(E.D. Tex. Sept 23, 2008) ...............................................................................................8, 9

*Editorial Caballero, S.A. de C.V. v. Playboy Enerprises, Inc*, 359 S.W.3d 318 (Tex. App. —Corpus Christi 2012, pet. denied) ..............................................................................................................9, 12, 13

*Harrison v. Texas Employers Ins. Ass'n*, 747 S.W.2d 494 (Tex. App. —Beaumont 1988, writ denied) ...........................................................................................10

*Hogue v. Kroger Store No. 107*, 875 S.W.2d 477 (Tex. App. —Houston [1st Dist.] 1994, writ denied) .............................................................................................10

*JLG Trucking, LLC v. Garza*, 466 S.W.3d 157 (Tex. 2015) ...................................10

*Owens-Corning Fiberglas Corp v. Malone*, 916 S.W.2d 551(Tex.App.—Houston [1st Dist.] 1996, aff'd on other grounds, 972 S.W.2d 35 (Tex. 1998)) ...................11

*El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012)..........................................15

*City of Laredo v. Montano*, 414 S.W.3d 731 (Tex. 2013)...........................17, 18, 19

*Tony Gullo Motors*, 212 S.W.3d (Tex. 2006)..........................................................20

*Smith v. Patrick W.Y. Tam Trust* 296 S.W.3d 545 (Tex. 2009).............................24

*Wythe II Corp. v. Stone*, 342 S.W.3d 96 (Tex. App. —Beaumont 2011, pet. denied)…........................................................................................................25

*Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812 (Tex. 1997) ........................................................................................................26

*Young v. Sanchez*, No. 04-10-00845-CV, 2011 (Tex. App—San Antonio Oct. 12, 2011, no pet.) .............................................................................................28

## RULES

Tex. R. App. P. 39..........................................................................................vi

Tex. R. Evid. 403 ........................................................................................14

**STATEMENT ON ORAL ARGUMENT**

Appellant Total believes that oral argument would assist the Court in deciding the issues involved, and therefore respectfully requests an oral argument pursuant to Rule 39 of the Texas Rules of Appellate Procedure.

**ISSUES PRESENTED**

I.     The trial court abused its discretion by allowing Mo-Vac's counsel to introduce evidence that was irrelevant, inadmissible, and highly prejudicial through impeachment on direct examination of Edmundo Ramirez, who was not offering any expert testimony in this matter, and such admission of evidence was calculated to cause and did cause the rendition of an improper judgment.

II.    The trial court abused its discretion by entering a final judgment on the jury's verdict because the jury's verdict was not supported by sufficient evidence and was grossly excessive.

No. 13-15-00348-CV

---

**In the Court of Appeals for the Thirteenth Court of Appeals District
Corpus Christi, Texas**

---

**TOTAL E&P USA, INC.**
*Appellant*,

**v.**

**MO-VAC SERVICES COMPANY, INC.**
*Appellee*.

---

ON APPEAL FROM THE 275TH JUDICIAL DISTRICT COURT,
HIDALGO COUNTY, TEXAS

Trial Court Case Number C-023-05-E

---

**AMENDED REPLY BRIEF OF APPELLANT TOTAL E&P USA, INC.**

---

TO THE HONRABLE JUSTICES OF THE COURT:

COMES NOW Appellant Total E&P USA, Inc. and files this Amended Reply Brief of Appellant, requesting that the Court reverse the trial court's judgment and render judgment or, in the alternative, reverse the trial court's judgment and remand the case for a new trial to determine the specific amount of work performed and hours spent on the sole-surviving claim of breach of confidentiality agreement against Total.

## STATEMENT OF FACTS

This case is on appeal from a jury verdict granting $370,375 in attorneys' fees to counsel for Mo-Vac Services Company, Inc. (hereinafter "Mo-Vac") for its representation on Mo-Vac's sole surviving claim of breach of confidentiality agreement against the sole surviving Defendant, plus $50,000 in conditional appellate fees. This was the second jury verdict in this matter. The first was rendered after the case was tried on the merits on each of Mo-Vac's claims in both contract (breach of confidentiality agreement and breach of oral contract) and tort against Defendants Total E&P USA, Inc. (hereinafter "Total") and Pool Well Services, Co. a/k/a Nabors Well Services (hereinafter "Pool"). (C.R. 1: 64-65). The jury in the first trial found in favor of Mo-Vac on each of its claims against both Defendants. (*Id.*). The trial court then entered a Final Judgment finding in favor of Mo-Vac on each of its claims, and finding that Total and Pool were jointly and severally liable for attorneys' fees to Mo-Vac in the amount of $433,912.50. (*Id.*). The attorneys' fees rendered against Total and Pool were awarded in connection with Mo-Vac's contract claims of breach of confidentiality agreement and breach of oral contract. (*See* Supp. C.R. 1: 68-69). Total and Pool appealed the jury's findings. (*See* Supp. C.R. 1: 59).

On August 23, 2012, this Court of Appeals issued its Memorandum Opinion in which it reversed the jury's decision on each of Mo-Vac's claims against Total and Pool, except for breach of confidentiality agreement against Total, and rendered a take-nothing judgment against Mo-Vac on each of its claim other than breach of confidentiality agreement against Total. (Supp. C.R. 1: 73-74). The Court of Appeals affirmed the lower court's award of $100,000 for Mo-Vac's breach of confidentiality claim. (Supp. C.R. 1: 73). Rather than uphold the attorneys' fees already awarded to Mo-Vac, the Court of Appeals instead reversed the award of $433,912.50 in attorneys' fees (for which Total and Pool had been found jointly and severally liable by the lower court), and remanded the case back to the trial court to determine a new award of attorneys' fees in connection with the sole remaining claim against the sole remaining defendant. (*Id.*).

Despite this clear reversal by the Court of Appeals of the original award of attorneys' fees (which had been rendered against both Total and Pool in joint and several liability), Mo-Vac ignored the Court of Appeals directive on remand and instead attempted to enforce the original award in its entirety. (*See* Supp. C.R. 1: 73, and C.R. 1: 56-71). Specifically, Mo-Vac filed its Motion to Determine Attorneys' Fees wherein it requested that the trial court award attorneys' fees in the same amount that was originally awarded against both Defendants and was

reversed on appeal. (*See* C.R. 1: 56-58). Recognizing that a trial was necessary in order to comply with the Court of Appeals' order of remand on the issue of attorneys' fees, on October 11, 2013, Total requested that the trial court set a docket control conference and set a trial in this cause. (C.R. 1: 75-77). On January 27, 2015, the trial court issued an Order Re-Setting Trial Date, setting a trial date of April 13, 2015 for the second trial in this matter. (C.R. 1: 87).

Despite the fact that the **only** issue involved in this case was the amount of attorneys' fees accrued by Mo-Vac in connection with its breach of confidentiality agreement claim, counsel for Mo-Vac called to the witness stand Mr. Edmundo Ramirez (hereinafter "Mr. Ramirez"), counsel for Total, and questioned him regarding the expert witness testimony he gave in an entirely different case as to the reasonable and necessary attorneys' fees in that specific case. (*See* R.R. 5: 44 54). Total's counsel objected to the line of questioning on the grounds that it was irrelevant as Mr. Ramirez was not offering expert testimony in this case. (R.R. 5: 46, line 21—47, line 4; 47, line 19—48, line 21; 49, line 11—51, line 4). The trial court sustained some objections and overruled others. (R.R. 5: 46, line 21—47, line 4; 47, line 19—48, line 21; 49, line 11—51, line 4; 60, lines 1-16).

Mo-Vac called Adrian Martinez (hereinafter "Mr. Martinez"), Mo-Vac's lead counsel at the prior trial, to testify as an expert on attorneys' fees and to

explain the attorneys' fees incurred in this case. (R.R. 5: 97-225). During his trial testimony, Mr. Martinez did not set forth the specific tasks and time incurred in connection with the sole surviving cause of action, breach of confidentiality agreement against Total. Instead, Mr. Martinez relied on a compilation (that was not created contemporaneously) from which he generalized that 90% of the time recorded could be attributed to the breach of confidentiality claim. (*See* R.R. 5: 126, lines 13-14; 133, line 22—134, line 8; 154, line 21—160, line 10). This testimony was not only insufficient, but, as discussed in detail below, was controverted by the testimony of Total's expert witness and the facts of this case. (*See* R.R. 6: 22, line 2—24, line 7, and R.R. 6: 27, line 24—29, line 6).

After hearing arguments and expert testimony from both sides, the trial court submitted this cause to the jury. The jury returned a verdict for $370,375 in attorneys' fees, along with $50,000 in conditional appellate fees. (C.R. 1: 105-110; App. Ex. 1). The trial court then entered a Final Judgment in the amounts awarded by the jury. (C.R. 1: 113-115; App. Ex. 2). Total filed a Motion for New Trial, which was ultimately denied by the trial court. (C.R. 1: 116-129; 191). The instant appeal followed. (*See* C.R. 1: 192-194).

## SUMMARY OF THE ARGUMENT

The trial court erred in allowing Mo-Vac's counsel to question Mr. Ramirez regarding the details of the expert opinion he offered in a separate case, wholly unrelated to the one at bar. The evidence Mo-Vac's counsel sought to and did in fact illicit through improper impeachment on direct exam was inadmissible, highly prejudicial, contained no probative value, was irrelevant, and its admission caused the rendition of an improper judgment.

The trial court further erred by upholding the jury's verdict because the jury's verdict was not supported by sufficient evidence and was grossly excessive as a matter of law. Mo-Vac's counsel failed to provide contemporaneous time records, itemized records, bills, or any other documentary evidence showing the specific amount of time and work performed in connection with Mo-Vac's sole surviving cause of action for breach of confidentiality agreement. The evidence presented by Mo-Vac consisted of generalized summaries prepared after the fact and failed to differentiate the specific amount of time spent on the only claim at issue (breach of confidentiality agreement against the only remaining Defendant) from the other claims presented at trial against both Defendants which were subsequently dismissed. As such, there was insufficient evidence to support the jury's verdict. Moreover, the amount of attorneys' fees ultimately awarded by the

jury was grossly excessive compensation for the sole claim of breach of confidentiality agreement.

## ARGUMENT

### I.
### By Allowing Mo-Vac's Counsel to Question Edmundo Ramirez (Who Repeatedly Stated that he Was Not Offering any Expert Opinion in this Case) Regarding the Expert Testimony he Gave on Attorneys' Fees in a Wholly Unrelated Matter, the Trial Court Admitted Evidence that Was Completely Irrelevant, Inadmissible, Served No Other Purpose than to Confuse and Mislead the Jury, and Was Highly Prejudicial

**A.** **Mo-Vac's Line of Questioning Regarding the Expert Opinion of Edmundo Ramirez Rendered in a Completely Unrelated Case Was Irrelevant**

At trial, Mo-Vac called Edmundo Ramirez (hereinafter "Mr. Ramirez"), lead trial counsel for Total, as its first witness. Mo-Vac had designated Mr. Ramirez as an expert on attorneys' fees, despite having no valid basis for doing so. As lead counsel for Total, Mr. Ramirez could not have been expected to serve as an expert on behalf of Mo-Vac, yet Mo-Vac designated him as an expert on the subject matter of "the reasonableness of attorneys [sic] fees." (C.R. 1: 143-145). Nowhere in Mo-Vac's designation did it specify that it was cross-designating Mr. Ramirez. Instead, Mo-Vac's designation indicates that it is designating Mr. Ramirez as its own expert, wholly separate from any designation on behalf of Total, without any basis for doing so. Clearly, this shows Mo-Vac's intent to

ensure that Mr. Ramirez was put on the stand no matter what. Mo-Vac was not interested in any actual expert opinion by Mr. Ramirez in this case, but instead wanted to question him regarding his testimony in a previous, wholly unrelated case.

In its Appellee's Brief to this Court, Mo-Vac misconstrues Total's argument regarding *Duininck Bros. v. Howe Precast, Inc.*, No. 4:06-CV-441, 2008 WL 4411641 (E.D. Tex. Sept. 23, 2008). Total cites to *Duininck* for the proposition that fees charged by another attorney or firm in another specific case are irrelevant for the purposes of determining the fee customarily charged in the locality for similar legal services, one of the eight *Arthur Andersen* factors applicable in this case.[1] Specifically, the court in *Duininck* stated the following:

---

[1] The parties agreed that the factor test set forth in *Arthur Andersen & Co. v. Perry Equip. Corp.* for determining reasonable attorneys' fees was the applicable standard for the jury to use in this case. (R.R. 5: 17, lines 7-12). Specifically, *Arthur Andersen* sets forth the following eight factors that a factfinder should consider when determining the reasonableness of a fee:
  1. the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
  2. the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;
  3. the fee customarily charged in the locality for similar legal services;
  4. the amount involved and the results obtained;
  5. the time limitations imposed by the client or by the circumstances;
  6. the nature and length of the professional relationship with the client;
  7. the experience, reputation, and ability of the lawyer or lawyers performing the services; and
  8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Moreover, what a single law firm charges for a particular set of services and its choice of tactics in representing a given client are issues decidedly distinct from deciding what constitutes a customary fee. The third *Land Rover* factor is plainly aimed at a composite of legal fees charged for a given service. [2] Thus, focusing on one law firm's billing practices is unhelpful in determining what is "customary." The thrust of this lawsuit is whether Duininck Brothers' fees, not those generated by Howe Precast, fall within the range of reason.

*Duininck Bros.*, No. 4:06-CV-441, 2008 WL 4411641, at *3.

The same logic used in *Duininck Bros.* regarding opposing counsel's attorneys' fees may be applied to the amount of attorneys' fees determined to be reasonable and necessary in a specific, wholly unrelated case. Such an isolated instance cannot be used to somehow speak to reasonable and necessary attorneys' fees awarded for breach of contract claims generally. However, this is exactly what Mo-Vac sought to accomplish by questioning Mr. Ramirez about the opinion he rendered in the specific case of *Editorial Caballero, S.A. de C.V. v. Playboy Enterprises, Inc.* (hereinafter "the *Playboy* case"). By continuously referring to the attorneys' fee opinion in the *Playboy* case and discussing the alleged factual similarities between *Playboy* and the case at bar, Mo-Vac's counsel essentially planted within the jury the idea of "if an attorneys' fee award substantially greater

---

945 S.W.2d 812, 818 (Tex. 1997).

[2] The court in *Duininck Bros.* cites to the factors for determining attorneys' fees set forth by the Texas Supreme Court in *Land Rover U.K., Ltd. v. Hinojosa*, 210 S.W.3d 604, 607 (Tex. 2006). However, these factors are identical to the factors for determining attorneys' fees set forth by the Texas Supreme Court in its earlier opinion of *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), relied on by the parties in the instant case.

than the amount of damages was reasonable there, why should it not be reasonable here."

As set forth above, Mo-Vac had no valid basis for calling Mr. Ramirez as an expert on attorneys' fees other than to introduce this irrelevant testimony having no bearing on the issue of reasonable and necessary attorneys' fees in the case at bar. Mo-Vac claims that such testimony was in fact relevant as impeachment on cross-examination. However, Mo-Vac's argument regarding cross-examination fails because Mr. Ramirez had not provided any opinion or testimony in this case on which he could be cross-examined. The general case law addressing cross-examination, as well as the cases cited by Mo-Vac in its Brief all contemplate situations addressing cross-examination of a witness who has provided trial or deposition testimony. *See generally Harrison v. Texas Employers Ins. Ass'n*, 747 S.W.2d 494, 497-498 (Tex.App.—Beaumont 1988, writ denied); *Hogue v. Kroger Store No. 107*, 875 S.W.2d 477, 479-480 (Tex.App.—Houston [1st Dist.] 1994, writ denied); *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 160-162 (Tex. 2015). Mo-Vac fails to cite to any case law addressing the specific situation presented here where the expert witness is cross examined without having provided any trial or deposition testimony as an expert in the case.

Mo-Vac cites to *Owens-Corning Fiberglas Corp. v. Malone* for the proposition that a party may call his opponent's expert witness prior to his direct testimony for the purpose of impeaching credibility. *See* 916 S.W.2d 551, 567 (Tex.App.—Houston [1st Dist.] 1996, aff'd on other grounds, 972 S.W.2d 35 (Tex. 1998). However, the facts presented in *Owens-Corning* are wholly distinguishable from the case at bar. Specifically, in *Owens-Corning*, the defendant had designated Dr. Kerby (who regularly served as an expert for the defendant in cases throughout the country) as its expert witness and announced its intention to call Dr. Kerby as an expert during its case in chief at trial. *See id.*, at 566-567. The plaintiffs in *Owens-Corning* designated Dr. Kerby as a fact witness and presented his deposition testimony at trial during their case in chief. *See id.*, at 566. After the plaintiffs presented Dr. Kerby's deposition testimony, the defendant abandoned its plan to call him to the stand, and argued on appeal that the plaintiffs should not have been able to call Dr. Kerby during their case in chief for the sole purpose of attacking his credibility. *See id.*, at 567. The appellate court overruled the defendant's point of error in this regard. *Id.*

Accordingly, in *Owens-Corning*, Dr. Kerby had provided deposition testimony from which the plaintiffs were able to impeach his credibility. These facts are wholly distinguishable from the case at bar where Mr. Ramirez had not

provided any deposition or trial testimony as an expert providing an expert opinion in this case. In this case, there was no prior expert opinion upon which Mo-Vac could cross-examine Mr. Ramirez.

**B.      Admission of Mr. Ramirez's Testimony Regarding his Opinion of Reasonable Attorneys' Fees in a Wholly Separate and Unrelated Case Was Not Harmless Error**

As discussed in detail above, the trial court erred in allowing Mo-Vac's improper impeachment of Mr. Ramirez on an opinion he offered in another, wholly separate case where Mr. Ramirez had not provided any prior expert opinion testimony in this case upon which he could be cross-examined. Contrary to Mo-Vac's argument, this admission of testimony was in no way harmless error. Mo-Vac points to the fact that testimony regarding this same *Playboy* case by Total's expert, Ray Thomas, was admitted without objection. However, Mo-Vac's questioning of Mr. Thomas regarding the Playboy case is an entirely separate matter than similar questioning of Mr. Ramirez.

With regard to Mr. Thomas, he was merely questioned regarding his opinion of the amount of attorneys' fees awarded in the Playboy case, and how that case differs from the case at bar. Respecting Mr. Ramirez, his questioning was very different because he was directly involved in the Playboy case and provided the expert opinion. In the case at bar, Mr. Ramirez was not serving as an expert, but

instead was serving as lead trial counsel for Total.  However, Mo-Vac's counsel was able to undermine Mr. Ramirez's credibility in the instant case and confuse and mislead the jury by insinuating that the same opinion personally given by Mr. Ramirez in another case should apply in the instant case.  The fact that Mo-Vac intended to question Mr. Ramirez on the stand no matter what, is emphasized by Mo-Vac's own designation of Mr. Ramirez as an expert, separate from any designation of by Total.

**C.      Admission of Mo-Vac's Questioning of Mr. Ramirez Regarding the Separate, Unrelated *Playboy* Case Was Unfairly Prejudicial**

As discussed in detail above, questioning regarding Mr. Ramirez's expert opinion rendered in the *Playboy* case, a case entirely unrelated to the one at bar and involving its own set of facts, was completely irrelevant.  However, assuming arguendo that such testimony was relevant, it still should have been excluded because the prejudicial nature of such testimony outweighed any probative value it may have had.

Mo-Vac's questioning of Mr. Ramirez, Total's lead trial counsel, regarding the unrelated and separate *Playboy* case was clearly designed to prejudice the jury against Mr. Ramirez and make the jury question Mr. Ramirez's credibility as Total's lead counsel.  Under Texas Rule of Evidence 403, "[t]he court may exclude

relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice." Tex. R. Evid. 403.

Through Mo-Vac's questioning, the jury heard from Mr. Ramirez that he had offered an expert opinion in the Playboy case (completely unrelated to the case at bar) that the attorneys' fees award should be greater than the amount of damages awarded, under the specific facts of that case. This was clearly designed to prejudice the jury against Mr. Ramirez, as lead counsel for Total, and call into question his credibility as an advocate for Total. Mo-Vac was able to introduce to the jury that "if an amount of attorneys' fees greater than the amount of damages was okay in that case (as Mr. Ramirez himself opined), then it should be okay here in this case."

Mo-Vac argues that even if such testimony was prejudicial, its admission was harmless because it was cumulative of other testimony regarding the Playboy case by Mr. Thomas. However, as discussed above, Mr. Thomas's testimony was completely different from Mr. Ramirez's testimony on the Playboy case. Mr. Thomas was simply asked his opinions on the unrelated case as an expert on attorneys' fees. In contrast, Mr. Ramirez was asked directly about the opinion he had rendered in the unrelated case solely for the purpose of confusing the jury and calling into doubt Mr. credibility as an advocate in this case.

## II.
### The Amount of Attorneys' Fees Awarded by the Jury and Entered in the Court's Final Judgment Was Not Supported by Sufficient Evidence and Was Grossly Excessive as a Matter of Law

**A.     The Evidence Presented at Trial Was Insufficient to Support the Award of Attorneys' Fees**

As set forth at length in Total's Appellant's Brief, Mo-Vac's compilation of work performed submitted at trial and the expert testimony of Mr. Martinez, counsel for Mo-Vac, were insufficient to support the jury's award of attorneys' fees in this case.  As the Texas Supreme Court reasoned in *El Apple I, Ltd. v. Olivas* in connection with the lodestar method for determining attorneys' fees, "attorneys should document their time much as they would for their own clients, that is, contemporaneous billing records or other documentation recorded reasonably close to the time when the work is performed."  370 S.W.3d 757, 763 (Tex. 2012) (finding that the evidence was insufficient to support the award of attorneys' fees where the attorneys based their time estimates on generalities such as the amount of discovery in the case, the number of pleadings filed, the number of witnesses questioned, and the length of the trial, and the court could not discern from the evidence how many hours each of the tasks required and whether that time was reasonable).

Here, it is undisputed that Mo-Vac's counsel did not rely on contemporaneous time records kept for billing purposes. (*See* R.R. 5: 192, lines 1-8). Instead, Mr. Martinez relied on a "compilation" of work performed that was created after the fact and failed to specify which of Mo-Vac's six original causes of action was being addressed for each of the particular tasks listed in the compilation. Specifically, the compilation contains a laundry list of general tasks such as "researched legal issues," "e-mail with client," "drafted letter," etc. that fail to provide any indication as to which of the causes of action the specific task pertains. (R.R. 10: Ex. 9). Moreover, the documents supporting the tasks set forth in this compilation no longer exist. (*See* R.R. 6: 71, line 16—72, line 4).

The compilation of work performed relied on by Mr. Martinez in his expert testimony is obviously flawed and unreliable. Specifically, as an example, there are days set forth in the compilation that list hours spent and hourly amounts incurred for three separate attorneys for attending trial on days when, in fact, the court was not in session.[3] Despite the clear flaws in the compilation, Mr. Martinez

---

[3] Q.    And what does the entry say?
 A.    Well, which one do you want me to tell you about?  For me?  The ones for Mr. Valdez?
        or    Mr. Garcia?  Which ones do you want?
 Q.    A, B and C.
 A.    A, B, C.  We start with 4/22.
 Q.    Let's stick to the date we're talking about, 4/24.
 A.    Sorry.  Hold on.  There's one for me of ten hours.
 Q.    Okay.  What does it say?

used this summary in support of his trial testimony regarding the amount of work performed in connection with the breach of confidentiality claim.

Under Texas case law, an attorney may testify as to the details of his work. *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013) ("in all but the simplest cases, the attorney would probably have to refer to some type of record or documentation to provide this information"). Here, Mo-Vac contends that the compilation relied on at trial, coupled with the testimony provided by Mr.

---

A. Trial, A.R.M., which is me.
Q. And that means you attended trial that day?
A. Yes, sir.
Q. And then next entry says trial for Mr. Garcia?
A. Yes, Mr. Garcia. And then there's one for Reymundo Valdez.
Q. And they're all different hours, correct?
A. Yes, sir.
Q. And then the one prior to that, the 4/23, what is the entry for you? You attended trial?
A. Yeah, yes sir.
Q. And Mr. Garcia?
A. Yes, sir.
Q. Are you sure that's correct?
A. Well, are you –
Q. I'm asking the questions, Mr. Martinez. Are you sure that that record is reliable, and that you attended trial, and all three of the attorneys that you have on there attended trial that date?
A. You know, if you have another document that says that we weren't in trial that date, then obviously this is incorrect, sir.
Q. I have another document.
A. Well then show it to me because it could be incorrect. I'm not going to mince words and dates with you. But is that the only dates that you're –
Q. I have the record. And the record does not reflect that we had trial that day. The Court took off those two days.
A. I do remember that we were off some days. Okay. What other days do you have that show that besides those two?

(R.R. 5: 208, line 4—209, line 20).

Martinez, constitute sufficient evidence as to the amount of attorneys' fees incurred. However, rather than describing discrete tasks performed specifically in furtherance of the breach of confidentiality agreement claim, Mr. Martinez instead broadly testified that he attributes 90% of the work performed in this matter to the sole remaining claim for breach of confidentiality agreement.

Mr. Martinez's testimony did not meet the level of evidence deemed sufficient in *City of Laredo v. Montano*, 414 S.W.3d 731 (Tex. 2013). The issue before the Texas Supreme Court in *City of Laredo* was the reasonableness of the attorneys' fees awarded to the home owner under a fee shifting statute allowing for attorneys' fees after an unsuccessful eminent domain suit brought by the City. *Id.*, at 732-733. In *City of Laredo*, the court analyzed the attorneys' fees claims by two attorneys, Richard Gonzalez and Adriana Benavides-Maddox. *Id.*, at 733. The court found that the testimony of Attorney Benavides-Maddox regarding her unbilled trial work was some evidence on which to base an award of attorneys' fees because it concerned contemporaneous or immediately completed work for which she had not had time to bill, and the billing inquiry involved contemporaneous events and discrete tasks. *See id.*, at 737. In contrast, the court in *City of Laredo* found that the testimony provided by Attorney Gonzalez, who did not make any contemporaneous record of his time or prepare any bills or

invoices, was not evidence of a reasonable attorney fee where he testified that he spent a lot of time getting ready for the lawsuit, conducted a lot of legal research, visited the premises many, many times, and spent countless hours on motions and depositions. *See id.*

In its Appellee's Brief, Mo-Vac contends that it presented more evidence at trial to support its attorneys' fees than what the court deemed sufficient in City of Laredo as to Attorney Benavidez-Maddox. (Mo-Vac's Appellees' Brief, at pg. 16). However, Mo-Vac ignores the fact that, contrary to the case at bar, *City of Laredo* involved only one claim (eminent domain), and all the attorneys' work performed was necessarily in connection with this claim for which attorneys' fees could be awarded. As such, Attorney Benavidez-Maddox did not need to get into the specificity required here and segregate the all the work she performed by individual claim.

Contrary to Mo-Vac's argument, the testimony provided by Mr. Martinez in this case is in fact similar to that of Attorney Gonzalez in *City of Laredo*, whose testimony was found insufficient. Specifically, Attorney Gonzalez admitted that he had no bill or time records, "but pointed to the 'thousands and thousands and thousands of pages that were accumulated in this case' as evidence of his time investment." *Id.*, 414 S.W.3d 731, 735 (Tex. 2013). Similarly, here, when asked

during his trial testimony what work he performed in connection with the breach of confidentiality claim, Mo-Vac's counsel basically testified that he had to sift through thousands of pages within boxes of documents in order to piece together the evidence to support the breach of confidentiality agreement. (*See* R.R. 5: 150, line 23—154, line 3).

While Mr. Martinez does have a compilation of work performed, it does not specify which tasks were performed in connection with which causes of action. Mo-Vac asserts that an attorney's opinion that he spent a particular percentage of time on the claim for which attorneys' fees are recoverable is generally sufficient to prove segregation. (Mo-Vac's Appellee's Brief, at pg. 18, n.2 (citing *Tony Gullo Motors*, 212 S.W.3d at 314, n.83)). However, here, Mr. Martinez takes his compilation (created after the fact) and attributes virtually all of his time to the single breach of confidentiality agreement claim. Breach of confidentiality agreement was one of six claims alleged at the first trial against two separate defendants, and one of two breach of contract claims alleged against Total. Mo-Vac would have been able to recover attorneys' fees for both the breach of oral contract as well as breach of confidentiality agreement, had the Court of Appeals not dismissed the claim for breach of oral contract.

Further, Mo-Vac misrepresents the trial testimony of Ray Thomas, Total's expert on attorneys' fees. Specifically, Mo-Vac claims that Mr. Thomas did not offer any contrary opinions about the number of hours that were necessary to prosecute Mo-Vac's claim for breach of the confidentiality agreement, and sets forth the following testimony:

> Q. Okay. Let's talk about the second part of the calculation. And that is the hours that were necessary. Do you have an opinion as to how many hours were necessary? Now, let's just – in general. Instead of breaking it down, how many hours for Adrian; how much for me? But how many hours work was necessary to prosecute the breach of confidentiality claim? Do you have an opinion in that regard?
>
> A. No.
>
> Q. No opinion?
>
> A. No.

(*See* Mo-Vac's Appellee's Brief, at pg. 19 (citing R.R. 5: 80, lines 7-18)).

Notably, Mo-Vac neglects to include Mr. Thomas' testimony continued on the next page of the trial transcript, wherein he does in fact express an opinion as to the second part of the analysis, the amount of hours necessary to prosecute the claim. Specifically, Mr. Thomas testified as follows:

> Q. The first step is you take a reasonable hourly rate, times the number of hours that were necessary to advance, prosecute the particular claim, gives you a dollar amount. That's step one. Is that fair?

A.     Yes.

Q.     And then step two is making an adjustment either up or down, based on certain particulars of the case?

A.     Yes

Q.     Okay.   All right.   And you've given us – **only opinions you're offering here today is the first part, the hourly rate, correct?**

A.     **No.**

Q.     **Did you have some opinions after all on how many hours were necessary to prosecute the breach of the confidentiality claim?**

A.     **I have opinions about that part of the analysis, but not the way you asked me the question.**

Q.     Well, I will tell you what.  **Tell us what those opinions are?**

A.     All right.   In order to determine what the necessary hours are, it is important that contemporaneous time records be kept because. Otherwise, after a long period of time in which it takes to prepare the case for trial, and then in this particular case, the amount of time that it takes to actually try the case, you know, how are we going to conduct a meaningful review of the work that was done to see whether it was necessary, or not.   And so the law says that we've got to keep or certain way that we should keep it is important to keep contemporaneous time records.   That means we make a little billing slip saying on this day, that Laura Thomas performed these tasks, you know, we reviewed the deposition, we prepared for hearing, we attended a hearing, we did this or that, and this is how much time for that day.   If I have a paralegal working, my paralegal Lisa Shawn's been with me 19 years.   She prepared a time slip for the work she did that day.   And then all of that is prepared and kept.   So that in order for someone to be able to review that and determine whether it was necessary or not, we've got a record to look at.   We have

documentation. And in this case, we don't have contemporaneous time records. We don't have any time slips. We don't have what Mr. Martinez said that he did. What he did was he created this summary after the fact. And I think he said that he based it off e-mails that he had, but he doesn't have them anymore. And so there's no way for me to conduct a meaningful review to see whether these hours were necessary, or not. I do have the summary that he prepared, admittedly after the fact. But that summary is not detailed. And in many of the time entries it doesn't even say who the attorney was that was performing the task. And so the documentation to make that review is not available to me. And that's why I cannot give you an opinion on which hours were necessary, how many hours were necessary, or not. I can tell you that this was a huge case as you said. Many witnesses. 600 Exhibits. Four thousand pages of a very long trial, you know, six weeks of trial including pretrial. **But for my review of the trial record, a small part of that related to the breach of confidentiality.** I know that as Mr. Ramirez said, you asked for $10 million on the breach of the oral agreement and fraud. And according to the jury $100,000 is related to the Confidentiality Agreement, which is obviously a small part of the over all case.

(R.R. 5: 81, line 10—pg. 84, line 1) (emphasis added).

For the reasons set forth above, neither the compilation of time spent (which sets forth general tasks without specifying which cause of action they apply to), nor the testimony of Mo-Vac's counsel (attributing essentially all of the work performed to the breach of confidentiality claim) are sufficient evidence to support the award of attorneys' fees.

**B.** **The Award of Attorneys' Fees for the Sole Surviving Claim of Breach of Confidentiality Agreement Was Grossly Excessive as a Matter of Law**

The $370,375 in attorneys' fees awarded to Mo-Vac is grossly disproportionate to the $100,000 in damages recovered by Mo-Vac in connection with its sole surviving claim of breach of confidentiality agreement against the sole surviving Defendant in this matter.

Mo-Vac misrepresents Total's use of *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545 (Tex. 2009). (*See* Mo-Vac's Appellee's Brief, at pg. 22). Contrary to Mo-Vac's contention, Total is not claiming that *Tam Trust* stands for the global proposition that attorneys' fees can never exceed the amount of damages awarded. Rather, Total argues that the amount of attorneys' fees awarded here was unreasonable and grossly disproportionate, under the particular facts of this case.

Total cites to *Tam Trust* to illustrate the importance of considering the amount involved and the results obtained in determinations of an award of attorneys' fees. 296 S.W.3d 545, 548 (Tex. 2009). In *Tam Trust*, the Texas Supreme Court found that even though the amount of attorneys' fees was uncontested, the lower court erred in awarding the plaintiff attorneys' fees that greatly exceeded the amount actually recovered by the plaintiff. *See id.* In reversing the lower court's decision as to attorneys' fees, the Texas Supreme Court

stated "[b]ut the fee, though supported by uncontradicted testimony, was unreasonable in light of the amount involved and the results obtained, and in the absence of evidence that such fees were warranted due circumstances unique to this case." *Id.* Total does not deny that Tam Trust involved a different situation in that the court in Tam Trust made the attorneys' fees determination, not the jury. However, Total contends that the same language regarding the importance of considering the amount involved and results obtained as a factor in attorneys' fees determinations still applies to the case at bar.

Mo-Vac again misrepresents Total's use of case law in its discussion of *Wythe II Corp. v. Stone*, 342 S.W.3d 96 (Tex.App.—Beaumont 2011, pet. denied) (*See* Mo-Vac's Appellee's Brief, at pg. 22). Contrary to Mo-Vac's assertion, Total does not cite to *Wythe* for the proposition that an attorneys' fee that exceeds the amount recovered is, in and of itself, sufficient to overturn an award of attorneys' fees.

Instead, Total analogizes *Wythe* to the case at bar in that the jury in *Wythe* awarded attorneys' fees that were grossly disproportionate and unreasonable based on the evidence presented and a misinterpretation of the *Arthur Andersen* factors. *See id.*, at 108. The court in *Wythe* found, after considering all of the *Arthur Andersen* factors, that the evidence in the case did not provide sufficient

justification for shifting the entire amount of the contingency fee to the appellant because much of the time expended concerned a mandamus proceeding in which the appellee was unsuccessful. *Id.* The case at bar is similar to *Wythe* in that the jury here was presented with confusing and misleading evidence through Mo-Vac's questioning of Mr. Ramirez, and with irrelevant information pertaining to all the work performed by Mo-Vac for each of its original claims against both Defendants through the compilation relied on by Mo-Vac's counsel.

One of the *Arthur Andersen* factors (the applicable factor test in the case at bar) used to determine the reasonableness of attorneys' fees is **the amount involved and the results obtained**. *See Arthur Andersen & Co.*, 945 S.W.2d at 818. Here, Mo-Vac originally sought to recover approximately $10 million for various claims asserted against several defendants. (R.R. 5: 196, lines 18-20). At the first trial in this case, Mo-Vac was awarded $750,000 on all of its claims against Total, and $433,912.50 in attorneys' fees (in joint and several liability with Pool). (C.R. 1: 64-65). After an appeal of the first trial, this Court of Appeals upheld only the $100,000 award for Mo-Vac's breach of confidentiality claim, dismissed all of Mo-Vac's other claims against Total, and dismissed all of Mo-Vac's claims against Pool. (Supp. C.R. 1: 73-74). This ruling left Total as the

only remaining Defendant, and breach of confidentiality agreement as the only surviving claim.

The Court of Appeals remanded this case to the trial court on the sole issue of reasonable and necessary attorneys' fees incurred in connection with the only remaining claim of breach of confidentiality agreement. Significantly, the trial court had previously awarded $433,912.50 in attorneys' fees to Mo-Vac. The Court of Appeals could have chosen to affirm this award in upholding the lower court's award of $100,000 for breach of confidentiality agreement. In fact, Mo-Vac's own calculations based on Mr. Martinez's testimony support this amount of attorneys' fees.[4] (*See* Mo-Vac's Appellee's Brief, at pg. 27). However, by remanding this case for a determination of a new attorneys' fees amount, the Court of Appeals clearly did not think the original amount was reasonable for the sole surviving claim against the sole surviving Defendant. While the amount ultimately awarded by the jury in the second trial of this case is less than the amount of attorneys' fees awarded by the trial court, it is still grossly disproportionate to the amount recovered.

---

[4] "Thus, the jury could have awarded as much [sic] $869,375 (1,738.75 hours at $500/hour) or $436,687.50 (1,738.75 hours at $250/hour) and as low as $30,000 (based on Mr. Thomas' testimony). (Mo-Vac's Appellee's Brief, at pg. 27).

Mo-Vac places great emphasis on case law standing for the proposition that a disproportionately large amount of attorneys' fees in comparison to the amount of damages awarded does not in and of itself render the attorneys' fees excessive. While Total does not disagree with this general proposition, in this case the attorneys' fee award was grossly excessive based on the facts involved, and no extenuating circumstances existed to justify such a disproportionate fee.

In its Appellee's Brief, Mo-Vac cites to a string of cases without providing any information as to the specific facts involved that rendered a disproportionate award of attorneys' fees appropriate in those particular cases. (Mo-Vac's Appellee's Brief, at pg. 26). For example, in *Young v. Sanchez*, one of the cases cited by Mo-Vac, extenuating circumstances existed that supported an award of attorneys' fees disproportionate to the amount of damages. No. 04-10-00845-CV, 2011 WL 4828021 (Tex. App. Oct. 12, 2011).

Specifically, *Young* involved a violation of a settlement agreement between Young and Sanchez by Young. *Young*, 2011 WL 4828021, at *1. After two years had passed with no resolution of the dispute, the Sanchezes filed an amended pleading in which they asserted a new counterclaim for breach of the settlement agreement. *See id.*, at *2. The Youngs did not file any pleading in response to the counterclaim. *See id.* Subsequently, the Sanchezes moved for a no-evidence

summary judgment on the Youngs' suit and for a traditional summary judgment on their counterclaim for the Youngs' breach of the settlement agreement and their request for attorney's fees. *See id.* Again, the Youngs did not respond. *See id.* Accordingly, the trial court granted summary judgment in favor of the Sanchezes, ordering that the Youngs take nothing by their suit and awarding the Sanchezes $907 in breach of contract damages and $9,201.57 in attorney's fees, plus court costs. *See id.*

In upholding the award of attorneys' fees on appeal, the court of appeals reasoned "[t]he fee award here is not excessive in view of the summary judgment record and the five-year period during which the dispute continued after execution of the Settlement Agreement." *Id.*, at *6. The court noted the special circumstances involved that supported the disproportionate award of attorneys' fees:

> Here, the summary judgment record shows the case was prolonged for five years after the Settlement Agreement, due in large part to the Youngs' objections and conduct that delayed and prevented the Sanchezes' ability to fully comply with the Settlement Agreement. We hold the attorney's fees are not excessive in light of the prolonged nature of the litigation, and are supported by the record.

*Id.*

No such circumstances exist in the case at bar to warrant the excessive amount of attorneys' fees awarded by the jury.

As discussed in detail above, Mr. Martinez relied on a compilation created after the fact that summarized the work performed in connection with all claims involved in this case, and did not specify which tasks were performed in connection with which claims. Mr. Martinez essentially took all of the hours spent on the case and attributed 90% to breach of confidentiality agreement, the sole surviving claim after appeal. This testimony was directly contradicted by the expert testimony by Ray Thomas. As set forth above, this single claim was only a small part of a much larger trial involving multiple claims against multiple defendants, and the amount awarded was grossly awarded and should be overturned.

## PRAYER

Total respectfully prays that this Court:

1)   Reverse the trial court's *Final Judgment* signed on April 30, 2015 (C.R. 1:  113-115; App. Ex. 2) ordering that Mo-Vac recover from Total:

   a.   $370,375.00 for the successful representation of the breach of confidentiality claim through trial;

   b.   $25,000.00 for future representation through appeal to the court of appeals, if one is taken;

c.    $5,000.00 for future presentation at the petition for review stage in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas;

d.    $12,000.00 for future presentation at the merits briefing stage in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas; and

e.    $8,000.00 for future presentation through oral argument and the completion of proceedings in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas.

2)    Reverse the trial court's denial of *Total E&P USA, Inc.'s Motion for New Trial* (C.R. 1:  191);

4.)    Render a decision that Appellee, *Mo-Vac Services Company, Inc.* be awarded $40,000 as reasonable and necessary attorneys' fees in this matter, in accordance with the expert testimony of Total's expert witness on attorneys' fees, Ray Thomas;

6.)    Alternatively, remand this case to the trial court for a new trial to determine the specific amount of work performed and hours spent on the sole surviving claim of breach of confidentiality agreement against Total; and

7.)    All such other and further relief to which Appellant, Total E&P USA, Inc. is justly entitled.

Respectfully submitted,

ELLIS, KOENEKE & RAMIREZ, L.L.P.
1101 Chicago
McAllen, Texas 78501-4822
Tel: (956) 682-2440
Fax: (956) 682-0820

By: */s/ Edmundo O. Ramirez*
    EDMUNDO O. RAMIREZ
    State Bar No. 16501420
    MINERVA I. ZAMORA
    State Bar No. 24037765

**ATTORNEY FOR APPELLANT**
**TOTAL E&P USA, INC.**

## CERTIFICATE OF COMPLIANCE

There are 7,271 words included in the Amended Appellant's Reply Brief.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has on November 13, 2015, been delivered, in the manner indicated below, to the following:

Adrian R. Martinez
Alberto T. Garcia, III
GARCIA & MARTINEZ, L.L.P.
6900 N. 10th St., Suite 2
McAllen, Texas 78504
*Via Electronic Mail & Electronic Filing*

    */s/ Edmundo O. Ramirez*
    Edmundo O. Ramirez

# APPENDIX

| Exhibit | Date | Document |
|---------|------|----------|
| 1 | 04/16/2015 | Jury Charge |
| 2 | 04/30/2015 | Final Judgment |

FILED
AT 11:51 O'CLOCK a M

APR 16 2015

LAURA HINOJOSA, CLERK
District Court, Hidalgo County
By_____ Deputy#22

CAUSE NO. C-023-05-E

| | | |
|---|---|---|
| MO-VAC SERVICES COMPANY, INC. | § | IN THE DISTRICT COURT, Hidalgo County |
| | § | |
| VS. | § | |
| | § | 275TH JUDICIAL DISTRICT |
| | § | |
| | § | |
| | § | |
| TOTAL E&P USA, INC. | § | HIDALGO COUNTY, TEXAS |

**JURY CHARGE**

MEMBERS OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions. Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in the dictionaries or on the Internet. Do not post any information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions:

1.      Do not let bias, prejudice or sympathy play any part in your decision.

2.      Base your answers only on the evidence submitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3.      You are to make up your own minds about the facts. You are the sole judges of the

Appendix Exhibit 1

105

credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4.  If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5.  All the questions and answers are important. No one should say that any question or answer is not important.

6.  A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

7.  Answer "yes" or "no" to all questions unless otherwise instructed. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

8.  Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do no discuss or consider the effect your answers will have.

9.  Do not answer questions by drawing straws or by any other method of chance.

10. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

11. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

12. Unless otherwise instructed, the answers to the questions must be based on the decision of at least ten of the twelve jurors. The same ten jurors must agree on every answer. Do not agree to be bound by a vote of anything less than ten jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would

waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

## Presiding Juror:

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2. The presiding juror has these duties:

   a. have the complete charge read aloud if it will be helpful to your deliberations;

   b. preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

   c. give written questions or comments to the bailiff who will give them to the judge;

   d. write down the answers you agree on;

   e. get the signatures for the verdict certificate; and

   f. notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

## Instructions for Signing the Verdict Certificate:

1. Unless otherwise instructed, you may answer the questions on a vote of ten jurors. The same ten jurors must agree on every answer in the charge. This means you may not have one group of ten jurors agree on one answer and a different group of ten jurors agree on another answer.

2. If ten jurors agree on every answer, those 10 jurors sign the verdict. If eleven jurors agree on every answer, those eleven jurors sign the verdict. If all twelve of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3. All jurors should deliberate on every question. You may end up with all twelve of you agreeing on some answers, while only ten or eleven of you agree on other answers. But when you sign the verdict, only those 10 who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

JUDGE PRESIDING

107

## QUESTION NO. 1:

What is a reasonable fee for the necessary services of the attorneys for Movac Services Company, Inc. in connection with Movac Services Company, Inc.'s claim for Breach of Confidentiality Agreement against Total E&P, stated in dollars and cents?

In determining the reasonableness of an attorney's fee award, you must consider the following factors:

1.   the time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly;

2.   the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

3.   the fee customarily charged in the locality for similar legal services;

4.   the amount involved and the results obtained;

5.   the time limitations imposed by the client or by the circumstances;

6.   the nature and length of the professional relationship with the client;

7.   the experience, reputation, and ability of the lawyer or lawyers performing the services; and

8.   whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Answer with an amount for each of the following:

a.   For the successful representation of the breach of confidentiality claim through trial.

Answer: $370,375

b.   For future representation through appeal to the court of appeals, if one is taken.

Answer: $25,000

c.   For future presentation at the petition for review stage in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas.

Answer: $5,000

d.   For future presentation at the merits briefing stage in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas.

Answer: $ 12,000

e. For future presentation through oral argument and the completion of proceedings in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas.

Answer: $ 8,000

## Verdict Certificate

Check one:

_____ Our verdict is unanimous. All twelve of us have agreed to each and every answer. The presiding juror has signed the certificate for all twelve of us.


_____        _____
Signature of Presiding Juror                Printed Name of Presiding Juror


_____ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.


___✓___ Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

| Signature | Name Printed |
|---|---|
| 1. Aleida C. Rodriguez | Aleida C. Rodriguez |
| 2. | Adalberto Munguia |
| 3. | Benino Capetillo Jr. |
| 4. Araceli Garcia | Araceli Garcia |
| 5. Linda T. Borjon | Linda T. Borjon |
| 6. | Yesenia Garcia |
| 7. | Martin Garcia |
| 8. | Jose Luis Salinas |
| 9. | Noemi Castillo Garza |
| 10. | Monica Peña |
| 11. | |

CAUSE NO. C-023-05-E

| | | |
|---|---|---|
| MO-VAC SERVICES COMPANY, INC. | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 275TH JUDICIAL DISTRICT |
| | § | |
| TOTAL E&P USA, INC. | § | HIDALGO COUNTY, TEXAS |

## FINAL JUDGMENT

On April 14, 2015 this case was called for trial. Plaintiff Mo-Vac Services Company, Inc. appeared through its representative and through its attorneys and announced ready for trial. Defendant Total E&P USA, Inc. also appeared through its representative and its attorneys and announced ready for trial.

After a jury was impaneled and sworn, it heard the evidence and arguments of counsel. In response to the jury charge, the jury made findings that the court received, filed, and entered of record. The Court takes judicial notice of those jury findings and they are incorporated herein by reference.

The Court hereby RENDERS judgment for Plaintiff Mo-Vac Services Company, Inc. and that it is entitled to recover reasonable and necessary attorneys' fees from Defendant Total E&P USA, Inc. as follows:

1. $370,375.00 for the successful representation of the breach of confidentiality claim through trial;

2. $25,000.00 for future representation through appeal to the Court of Appeals, if one is taken and Plaintiff Mo-Vac Services Company, Inc. is successful in such appeal;

3. $5,000.00 for future representation at the petition for review stage in the Supreme Court of Texas, if the case comes before the Supreme Court of

Appendix Exhibit 2

1

113

Texas and Plaintiff Mo-Vac Services Company, Inc. is successful before the Texas Supreme Court;

4.   $12,000.00 for future representation at the merits briefing stage in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas and Plaintiff Mo-Vac Services Company, Inc. is successful before the Texas Supreme Court;

5.   $8,000.00 for future representation through oral argument and the completion of proceedings in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas and Plaintiff Mo-Vac Services Company, Inc. is successful before the Texas Supreme Court; and

6.   post-judgment interest that begins to accrue on the dates described below at an annual rate of 5%, and continues accruing until the date this judgment is satisfied:

a.   on the amount in Paragraph 1, interest begins to accrue on the day this judgment is signed;

b.   on the amount in Paragraph 2, interest begins to accrue on the date the Court of Appeals issues its final judgment;

c.   on the amounts in Paragraph 3-5, interest begins to accrue on the date the Supreme Court of Texas issues its final judgment.

This judgment is final, disposes of all claims and all parties, and is appealable.

The Court orders execution to issue for this judgment.

2

114